## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

NECOLE ROTTHOFF, AND ALL
OTHERS SIMILARLY SITUATED,

     *Plaintiff*,

v.

NEW YORK STATE CATHOLIC
HEALTH PLAN, INC. d/b/a FIDELIS
CARE NEW YORK, CENTENE
CORPORATION, CENTENE
MANAGEMENT COMPANY, LLC,
NEW YORK QUALITY
HEALTHCARE CORPORATION f/k/a
CENTENE ACQUISITION
CORPORATION, AND CENTENE
COMPANY OF NEW YORK, LLC,

     *Defendants*.

Civil Action No. 19 Civ. 4027

## CLASS AND COLLECTIVE ACTION COMPLAINT

Plaintiff Necole Rotthoff ("Plaintiff") files this Class and Collective Action Complaint ("Complaint") against New York State Catholic Health Plan, Inc. d/b/a Fidelis Care New York ("Fidelis Care"), Centene Corporation, New York Quality Healthcare Corporation f/k/a Centene Acquisition Corporation ("New Fidelis"), Centene Management Company, LLC ("CMC"), and Centene Company of New York, LLC ("CCNY") (collectively, "Defendants"), and in support states the following:

**Nature of This Lawsuit**

1.    Defendants are health insurance providers that, under the "Fidelis Care" name, provide health coverage to over 1.7 million members in New York.

2.     Defendants employed Plaintiff and other individuals to perform utilization review and case management functions to reduce the cost of medical care under various "job titles" in their "Clinical & Nursing" job family[1] that include one or more of the following terms or variations of those terms: (1) Case/Care Manager; (2) Care Coordinator; (3) Utilization Review/Management;[2] (4) UAS/Assessment Nurse; and (5) Intake Nurse/Specialist (collectively, "Care Management Employees").

3.     Defendants paid Care Management Employees a salary.

4.     Defendants' Care Management Employees regularly worked over 40 hours per week.

5.     Defendants classified Care Management Employees as exempt from state and federal overtime laws and did not pay them overtime when they worked over 40 hours in an individual workweek.

6.     Defendants misclassified Care Management Employees as exempt from state and federal overtime laws.

7.     The job functions performed by Plaintiff and other Care Management Employees primarily consist of non-exempt work, including collecting information to document insured individual's medical circumstances, inputting answers to those questions into Defendants' computer system, using established guidelines to maximize utilization of plan resources through application of predetermined criteria, coordinating care by performing ministerial tasks, including arranging appointments, referrals, and obtaining necessary authorizations from individuals,

---

[1] http://bit.ly/Fidelis-CN-Job (reflecting Defendants' sixteen job families including Defendants' "Clinical & Nursing" job family).

[2] This includes job titles that include the abbreviation "UM" (Utilization Management) or "UR" (Utilization Review).

supplying insured individuals with additional information and resources to allow them to educate themselves about their health plan, and other similar work ("Care Management Work").

8.    Plaintiff brings this action on behalf of herself and other similarly situated Care Management Employees, who due to Defendants' misclassification scheme, were not paid all earned overtime pay for time they worked in excess of 40 hours in individual work weeks in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, et seq.

9.    Plaintiff also brings class action claims under Articles 6 and 19 of the New York Labor Law (the "NYLL"), NYLL §§ 190, *et seq.*, 650 *et seq.*, and the supporting Minimum Wage Order for Miscellaneous Industries and Occupations, 12 N.Y.C.R.R. Part 142.

10.    Plaintiff brings the Second, Third, and Fourth Causes of Action under the NYLL on behalf of herself and all other similarly situated Care Management Employees, pursuant to Fed. R. Civ. P. 23(b)(3) and 23(c)(4), for Defendants' failure to:  (1) pay overtime wages; (2) provide accurate wage statements (i.e., paystubs), as required by NYLL § 195(3); and (3) provide accurate wage notices at the time of hiring ("hiring notices"), as required by NYLL § 195(1).

**Jurisdiction and Venue**

11.    This Court has subject matter jurisdiction under 28 U.S.C. § 1331 because Plaintiff's FLSA claim arises under federal law. *See* U.S.C. § 216(b).

12.    This Court has supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367(a) because it arises out of the same facts as her FLSA claims.

13.    Venue is proper in this District under 28 U.S.C. § 1391 because the events forming the basis of this suit occurred in this District.

**The Parties -- Plaintiff**

14.      Plaintiff worked for Defendants as a Care Management Employee from May 2016 to January 2019.

15.      During her employment, Plaintiff was an "employee" of Defendant Fidelis Care as defined by the FLSA in 29 U.S.C. § 203(e).

16.      During her employment, Plaintiff was an "employee" of Defendant Fidelis Care as defined by NYLL §§ 190(2), 651(5) and 12 N.Y.C.R.R. 142-2.14(a).

17.      During her employment, Defendant Fidelis Care was Plaintiff's "employer" as defined under the FLSA in § 203(d).

18.      During her employment, Defendant Fidelis Care was Plaintiff's "employer" as defined by NYLL §§ 190(3), 651(6).

19.      During her employment, Plaintiff was an "employee" of Defendant Centene Corporation as defined by the FLSA in 29 U.S.C. § 203(e).

20.      During her employment, Plaintiff was an "employee" of Defendant Centene Corporation as defined by NYLL §§ 190(2), 651(5) and 12 N.Y.C.R.R. 142-2.14(a).

21.      During her employment, Defendant Centene Corporation was Plaintiff's "employer" as defined under the FLSA in § 203(d).

22.      During her employment, Defendant Centene Corporation was Plaintiff's "employer" as defined by NYLL §§ 190(3), 651(6).

23.      During her employment, Plaintiff was an "employee" of Defendant New Fidelis as defined by the FLSA in 29 U.S.C. § 203(e).

24.      During her employment, Plaintiff was an "employee" of Defendant New Fidelis as defined by NYLL §§ 190(2), 651(5) and 12 N.Y.C.R.R. 142-2.14(a).

25.     During her employment, Defendant New Fidelis was Plaintiff's "employer" as defined under the FLSA in § 203(d).

26.     During her employment, Defendant New Fidelis was Plaintiff's "employer" as defined by NYLL §§ 190(3), 651(6).

27.     During her employment, Plaintiff was an "employee" of Defendant CMC as defined by the FLSA in 29 U.S.C. § 203(e).

28.     During her employment, Plaintiff was an "employee" of Defendant CMC as defined by NYLL §§ 190(2), 651(5) and 12 N.Y.C.R.R. 142-2.14(a).

29.     During her employment, Defendant CMC was Plaintiff's "employer" as defined under the FLSA in § 203(d).

30.     During her employment, Defendant CMC was Plaintiff's "employer" as defined by NYLL §§ 190(3), 651(6).

31.     During her employment, Plaintiff was an "employee" of Defendant CCNY as defined by the FLSA in 29 U.S.C. § 203(e).

32.     During her employment, Plaintiff was an "employee" of Defendant CCNY as defined by NYLL §§ 190(2), 651(5) and 12 N.Y.C.R.R. § 142-2.14(a).

33.     During her employment, Defendant CCNY was Plaintiff's "employer" as defined under the FLSA in § 203(d).

34.     During her employment, Defendant CCNY was Plaintiff's "employer" as defined by NYLL §§ 190(3), 651(6).

35.     Plaintiff is a resident of New York State.

**The Parties – Defendants**

36.     Defendant Fidelis Care is a New York Corporation.

37.    Defendant Fidelis Care's principal place of business is in this Judicial District, specifically in Queens County.

38.    Defendant Centene Corporation is a Wisconsin Corporation.

39.    Defendant Centene Corporation's principal place of business is in St. Louis, Missouri.

40.    Defendant New Fidelis is a subsidiary of Defendant Centene Corporation.

41.    Defendant New Fidelis is a New York corporation.

42.    Defendant New Fidelis' principal place of business is in this Judicial District.

43.    Defendant CMC is a subsidiary of Defendant Centene Corporation.

44.    Defendant CMC is a Wisconsin limited liability company.

45.    Defendant CMC's principal place of business is in St. Louis Missouri.

46.    Defendant CCNY is a subsidiary of Defendant Centene Corporation.

47.    Defendant CCNY is a New York Limited Liability Company.

48.    Defendant CCNY has its principal place of business in New York.

49.    According to the New York Department of State Division of Corporations' database, CCNY's current entity status is inactive.

50.    Defendant Fidelis Care is an "enterprise" as defined by the FLSA in 29 U.S.C. § 203(r)(1).

51.    Defendant Fidelis Care is an enterprise engaged in commerce or in the production of goods for commerce as defined by the FLSA in 29 U.S.C. § 203(s)(1)(A).

52.    Defendant Fidelis Care has made more than $500,000 in sales made or business done in each of the last three calendar years.

53.    Defendant Centene Corporation is an "enterprise" as defined by the FLSA in 29 U.S.C. § 203(r)(1).

54.    Defendant Centene Corporation is an enterprise engaged in commerce or in the production of goods for commerce as defined by the FLSA in 29 U.S.C. § 203(s)(1)(A).

55.    Defendant Centene Corporation has made more than $500,000 in sales made or business done in each of the last three calendar years.

56.    Defendant New Fidelis is an "enterprise" as defined by the FLSA in 29 U.S.C. § 203(r)(1).

57.    Defendant New Fidelis is an enterprise engaged in commerce or in the production of goods for commerce as defined by the FLSA in 29 U.S.C. § 203(s)(1)(A).

58.    Defendant New Fidelis has made more than $500,000 in sales made or business done in each of the last three calendar years.

59.    Defendant CMC is an "enterprise" as defined by the FLSA in 29 U.S.C. § 203(r)(1).

60.    Defendant CMC is an enterprise engaged in commerce or in the production of goods for commerce as defined by the FLSA in 29 U.S.C. § 203(s)(1)(A).

61.    Defendant CMC has made more than $500,000 in sales made or business done in each of the last three calendar years.

62.    Defendant CCNY is an "enterprise" as defined by the FLSA in 29 U.S.C. § 203(r)(1).

63.    Defendant CCNY is an enterprise engaged in commerce or in the production of goods for commerce as defined by the FLSA in 29 U.S.C. § 203(s)(1)(A).

64.    Defendant CCNY has made more than $500,000 in sales made or business done in each of the last three calendar years.

65.     Defendants are collectively an "enterprise" as defined by the FLSA in 29 U.S.C. § 203(r)(1).

66.     Defendants are collectively an enterprise engaged in commerce or in the production of goods for commerce as defined by the FLSA in 29 U.S.C. § 203(s)(1)(A).

67.     Defendants have collectively made more than $500,000 in sales made or business done in each of the last three calendar years.

**The Parties – The Fidelis Care Acquisition**

68.     On September 12, 2017, Fidelis Care entered into an Asset Purchase Agreement with Centene Corporation to transfer substantially all of its assets in exchange for $3.75 billion ("Transaction").[3]

69.     On May 7, 2018, Fidelis Care submitted a verified petition ("Petition") to the Office of the New York Attorney General ("Attorney General") for review and appeal of the Transaction, as required by sections 510 and 511-a of Not-for-Profit Corporation Law.[4]

70.     The Petition explained that New Fidelis had been "formed as a wholly owned subsidiary of Centene [Corporation] to operate the businesses acquired [from Fidelis Care] following the closing" of the Transaction.[5]

71.     The Petition, however, explained that New Fidelis would not begin operating all of Fidelis Care's significant business segments at the time of closing.

---

[3] http://bit.ly/PSAgreement1 (September 12, 2017 Asset Purchase Agreement filed with the Security and Exchange Commission) (last visited June 14, 2019).

[4] *See* http://bit.ly/NYAGApproval, Attorney General Approval, ¶ 1 (generally referring to Petition) (last visited June 14, 2019).

[5] *Id*. ¶ 4 (citing Petition, ¶ 86).

72.    Instead, Fidelis Care's largest business segments ("Managed Care Business Segments") dedicated to providing (1) "individual commercial market products (including its Qualified Health Plans)" would not be transitioned until the next annual open enrollment period; and (2) "Medicare products (Medicare Advantage, Medicare Advantage D-SNP, Medicaid Advantage and Medicaid Advantage Plus)," would be not be transferred to Centene or New Fidelis until the transfer was approved by the Center for Medicare and Medicaid services.[6]

73.    In its Petition, Fidelis Care agreed to enter into an agreement with CMC[7] and CCNY[8] after the closing of the Transaction "to assume responsibility for all operations," related to the Managed Care Business Segments.[9]

74.    On June 13, 2018, Centene Corporation and New Fidelis entered into an "Undertaking Agreement" with the Attorney General to take on additional obligations to benefit the State of New York and obtain approval from the Attorney General for the Transaction.[10]

75.    In the Undertaking Agreement, Centene Corporation agreed (1) to extend offers of employment to all active employees of Fidelis Care employed the day prior to the closing of the Transaction; and (2) not to terminate the existing Fidelis Care employees hired by Centene

---

[6] _Id._ ¶ 4 (a)-(c) (citing Petition, ¶¶ 195-196) (other citations omitted).

[7] _See, e.g._, _Clark v. Centene Corp._, No. A-12-CA-174-SS, 2013 WL 12120414, at *3 (W.D. Tex. Feb. 1, 2013) (explaining CMC's role as an in-house consulting services that assists Centene Corporation subsidiaries with employment issues by advising them regarding termination decisions, creating employee handbooks, and creating job descriptions and helping to determine FLSA exemption status of employees).

[8] http://bit.ly/NYAGApproval, Undertaking Agreement, ¶ 11 (section entitled "Organizational Documents" providing that, "Centene Company of New York, LLC, a … wholly-owned subsidiary of Centene … will serve as the employer for the employees hired from Fidelis Care").

[9] _Id._, Attorney General Approval, ¶ 4(d) (citing Petition, ¶ 79).

[10] _Id._, Undertaking Agreement.

Corporation at closing for a period of one year absent good cause or the occurrence of a material adverse change to the business.[11]

76.    The Undertaking Agreement also required Centene Corporation "to cause New Fidelis, upon the closing of the Transaction" to:

- formulate written policies and procedures describing compliance expectations and incorporate these policies into a code of conduct or code of ethics for employees;

- designate an employee responsible for New Fidelis' compliance program and the designee will report to New Fidelis' chief executive or a senior administrator designated by Centene's leadership and, periodically, to the Board of Directors of New Fidelis;

- provide training and education to all New Fidelis employees, including executives and members of the Board of Directors of New Fidelis, on compliance issues, expectations, and the compliance program operation; such training shall occur periodically and shall be made a part of the orientation for a new employee or Board member;

- ensure that communication lines to the employee responsible for New Fidelis' compliance program shall be accessible to all employees and that such communication lines shall include a method for anonymous and confidential good-faith reporting of potential compliance issues;

- establish and enforce disciplinary policies to encourage good-faith participation in the compliance program by all affected individuals, including policies that articulate expectations for reporting compliance issues and assist in their resolution and outline sanctions for: (i) failing to report suspected problems; (ii) participating in non-compliant behavior; or encouraging, directing, facilitating, or permitting non-compliant behavior.

- ensure that New Fidelis will have a policy of non-intimidation and non-retaliation for good-faith reporting of compliance violations.[12]

_____

[11] *Id.* ¶ 2 ("Centene confirms that, subject to satisfaction of Centene's employment policies regarding employee documentation, drug testing, background screening and similar matters, it will make, or cause an affiliate to make, offers of employment, effective as of the Closing, to all active employees of Fidelis Care as of the day immediately prior to the closing of the Transaction. Centene further confirms and agrees that, for a period of one year following the closing of the Transaction, it will not terminate any employee that was so hired from Fidelis Care other than for cause or due to the occurrence of a material adverse change to the business.").

[12] *Id.* ¶ 4 ("Centene confirms that, subject to satisfaction of Centene's employment policies regarding employee documentation, drug testing, background screening and similar matters, it will

77.    The Undertaking Agreement also provides the following:

- Centene Corporation and New Fidelis agreed "that each entity shall not, and shall cause its affiliates not to, limit the whistleblower rights of any of its New York-based employees, vendors or consultants before any state or federal law enforcement or regulatory body in any agreements regarding employment or separation from employment entered into by either of the Centene Companies or its affiliates or implement any policies or procedures that would limit such rights."

- Centene Corporation confirmed and agreed to "cause New Fidelis to maintain NCQA accreditation for New Fidelis for a period of not less than three years following the closing of the Transaction."

- Centene Corporation provided a Restated Certification of Corporation of Centene Acquisition Company filed to change the name of the Corporation from "Centene Acquisition Corporation" to New Fidelis on April 10, 2018.

- Centene Corporation also provided copies of the Articles of Incorporation for CCNY, "a New York limited liability company that will serve as the employer for the employees hired from Fidelis Care."

- Centene Corporation agreed "to notify the Attorney General within 90 days following any changes to the Articles of Incorporation, By Laws, or Directors of New Fidelis or CCNY set forth above."[13]

78.    The Attorney General approved the Transaction on June 14, 2018.[14]

79.    The Transaction closed on July 1, 2018.[15]

80.    Following closing, Centene Corporation made offers of employment to individuals

actively employed by Fidelis Care, including Plaintiff and other Care Management Employees, if

---

make, or cause an affiliate to make, offers of employment, effective as of the Closing, to all active employees of Fidelis Care as of the day immediately prior to the closing of the Transaction. Centene [Corporation] further confirms and agrees that, for a period of one year following the closing of the Transaction, it will not terminate any employee that was so hired from Fidelis Care other than for cause or due to the occurrence of a material adverse change to the business.").

[13]*Id.* ¶¶ 5, 8, 9, 11.

[14]http://bit.ly/NYAGApproval, Attorney General Approval, p. 1.

[15]www.sec.gov/Archives/edgar/data/1071739/000107173919000032/form10-k.htm        (Centene Corporation's Form 10-k for fiscal year ending December 31, 2018) (last visited June 14, 2019).

they could satisfy <u>Centene Corporation</u>'s "employment policies regarding employee documentation, drug testing, background, screening and similar matters."[16]

81.    Following closing, New Fidelis instituted employment policies, procedures, training, education, disciplinary policies and retaliation policies applicable to the Fidelis Care Care Management Employees who accepted Centene Corporation's offer of employment at closing.[17]

82.    Following closing, CCNY and CMC began operating all aspects of the Managed Care Business Segments, including the employment of Care Management Employees who accepted offers at the closing of the Transaction, until they could be transferred to Centene Corporation.[18]

**Factual Allegations**

83.    Plaintiff worked as a Care Management Employee for Defendants.

84.    During her employment with Defendants, Plaintiff primarily performed Care Management Work.

85.    During her employment, Plaintiff's job duties were routine and rote and did not include the exercise of discretion and judgment with respect to matters of significance.

86.    During her employment, Plaintiff's job duties did not involve providing nursing care in a clinical setting or providing direct medical care to individuals.

87.    Rather, Plaintiff's job duties consisted of Care Management Work.

88.    Defendants required Plaintiff to work over 40 hours in one or more individual workweeks.

---

[16] http://bit.ly/NYAGApproval, <u>Undertaking Agreement</u>, ¶ 2.

[17] *Id.*, Undertaking Agreement, ¶ 4 (d) (providing that CMC and CCNY would "assume responsibility of operations of Fidelis Care's individual commercial…. and Medicare" product lines until able to be transferred to Centene Corporation) (citing <u>Petition</u>, ¶ 79, Exhibit 23).

[18] See http://bit.ly/NYAGApproval, Undertaking Agreement, ¶ 11.

89.     During her employment with Defendants, Plaintiff worked over 40 hours in one or more individual workweeks.

90.     For example, from about February 2018 to September 2018, Plaintiff regularly began work at 8:30 am and regularly worked until at least 5:30 pm.  Plaintiff also worked through her 60 minute meal break at least twice per week.

91.     Defendants classified Plaintiff as exempt from the overtime provisions of the FLSA and NYLL.

92.     Defendants misclassified Plaintiff as exempt from the overtime provisions of the FLSA and NYLL.

93.     When Plaintiff worked over 40 hours in individual workweeks, Defendants did not pay Plaintiff overtime at one-and-one-half times her regular rate of pay.

94.     Instead, Defendants paid Plaintiff a salary.

95.     When Plaintiff was hired, Defendants failed to provide Plaintiff with an accurate hiring notice.

96.     Defendants never issued Plaintiff an accurate wage statement.

97.     Specifically, Defendants did not list the number of hours Plaintiff worked on her paystubs.

**Collective Action Allegations**

98.     Plaintiff brings her FLSA claims as a collective action.

99.     Plaintiff's consent form to participate in this collective action is attached to this Complaint as Exhibit A.

100.    The collective action is defined as follows:

All individuals employed by Defendants in New York as Care Management Employees in the last three years who were paid a salary and no overtime ("Collective Action Members").

101.    Plaintiff is similarly situated to the potential Collective Action Members because they were paid the same and performed the same primary job duties they performed.

102.    In the last three years, Defendants have employed individuals who performed the same primary duties as Plaintiff.

103.    Of Defendants' employees who performed the same primary job duties as Plaintiff in the last three years, Defendants classified some or all as exempt from the overtime provisions of the FLSA and paid them a salary.

104.    Of employees classified as exempt and who performed the same primary duties as Plaintiff in the last three years, some or all worked over 40 hours in individual workweeks.

105.    Defendants maintained one or more common job descriptions for Care Management Employees.

106.    Defendants have the names and addresses for potential Collective Action Members in their payroll or personnel records.

107.    Defendants have email addresses for potential Collective Action Members in their payroll or personnel records.

108.    Defendants have phone numbers for potential Collective Action Members in their payroll or personnel records.

109.    Defendants are aware or should have been aware that the FLSA required them to pay potential Collective Action Members overtime.

**Class Action Allegations**

110.    Plaintiff also seeks class certification of the following state law-sub class under Fed. R. Civ. P. 23:

> All individuals employed by Defendants in New York as Care Management Employees in the past six years who were paid a salary and no overtime, and whose job duties included Care Management Work (the "Class").

111.    The Class has more than 40 members.

112.    As a result, the Class is so numerous that joinder of all members is not practical.

113.    There are questions of law or fact common to the Class, including (1) whether the Class primarily performed non-exempt work; (2) whether Defendants violated the NYLL by refusing to pay the Class overtime pay; and (3) the proper measure of damages if Defendants misclassified the Class as exempt from the overtime provisions of the NYLL.

114.    Plaintiff's overtime claims are typical of those of the Class because they arise out of Defendants' uniform compensation practices.

115.    Defendants' defenses to Plaintiff's NYLL claims are typical of its defenses to those of the Class because they are grounded in the same compensation practices.

116.    Plaintiff can fairly and adequately protect the interests of the Class because she is asserting the same claims as the Class.

117.    Plaintiff can fairly and adequately protect the interests of the Class because she has no interests adverse to the Class.

118.    Plaintiff can fairly and adequately protect the interests of the Class because she has retained counsel experienced in class action employment litigation.

119.    The common questions of law and fact predominate over the variations which may exist between members of the Class, if any.

120.    Plaintiff and the members of the Class on the one hand, and Defendants on the other, have a commonality of interest in the subject matter and remedy sought, namely back wages, interest, penalties, attorneys' fees and costs.

121.    If individual actions were required to be brought by each member of the Class injured or affected, it would necessarily result in a multiplicity of lawsuits, creating a hardship to the individuals and to this Court, as well as the Defendants.

122.    Accordingly, a class action is an appropriate method for the fair and efficient adjudication of this lawsuit and distribution of the common fund to which the Class is entitled.

123.    The books and records of Defendants are material to the Class's claims because they disclose the hours worked by each member of the Class and the rate of pay for that work.

### FIRST CAUSE OF ACTION
**FLSA – Failure to Pay Overtime**
**(Brought on behalf of Plaintiff and the Collective Action Members)**

124.    Plaintiff incorporates here the previous allegations of this Complaint.

125.    Defendants violated the FLSA by failing to pay overtime to Plaintiff and the Collective Action Members when they worked over 40 hours in individual workweeks.

126.    Plaintiff was not exempt from the overtime provisions of the FLSA.

127.    Collective Action Members were not exempt from the overtime provisions of the FLSA.

128.    Plaintiff was directed by Defendants to work, and did work, over 40 hours in one or more individual workweeks.

129.    Other Collective Action Members were directed to work, and did work, over 40 hours in one or more individual workweeks.

130.    Defendants paid Plaintiff a salary and no overtime compensation.

131.    Defendants paid other Collective Action Members a salary and no overtime compensation.

132.    Defendants violated the FLSA by failing to pay overtime to Plaintiff at one and one-half times her regular rate of pay when she worked over 40 hours in one or more individual workweeks.

133.    Defendants violated the FLSA by failing to pay overtime to other Collective Action Members at one and one-half times their regular rates of pay when they worked over 40 hours in one or more individual workweeks.

134.    Defendants' violations of the FLSA were willful.

135.    As a result, Defendants are indebted to Plaintiff in the amount of the unpaid overtime compensation, together with interest, liquidated damages, attorneys' fees, and costs in an amount to be determined at trial.

**SECOND CAUSE OF ACTION**
**NYLL – Failure to Pay Overtime**
**(Brought on behalf of Plaintiff and the Class)**

136.    Plaintiff incorporates here the previous allegations of this Complaint.

137.    Defendants violated the NYLL by failing to pay overtime to Plaintiff and the Class when they worked over 40 hours in individual workweeks.

138.    Defendants classified Plaintiff as exempt from the overtime provisions of the NYLL.

139.    Defendants classified the Class as exempt from the overtime provisions of the NYLL.

140.    Plaintiff was not exempt from the overtime provisions of the NYLL.

141.    The Class was not exempt from the overtime provisions of the NYLL.

142.    Defendants lacked a good faith basis, within the meaning of NYLL § 663, to believe their failure to pay Plaintiff and the Class overtime wages complied with the NYLL.

143.    Plaintiff was regularly directed to work by Defendants, and did work, over 40 hours in individual workweeks.

144.    Defendants violated the NYLL by failing to pay Plaintiff and the Class overtime at one and one-half times their regular rates of pay when they worked over 40 hours in individual workweeks.

145.    As a result, Defendants are indebted to Plaintiff in the amount of the unpaid overtime compensation, together with interest, liquidated damages, attorneys' fees, and costs in an amount to be determined at trial.

### THIRD CAUSE OF ACTION
### NYLL – Failure to Provide Wage Statements
### (Brought on behalf of Plaintiff and the Class)

146.    Plaintiff incorporates here the previous allegations of this Complaint.

147.    Defendants failed to supply Plaintiff and members of the Class with an accurate statement of wages as required by NYLL § 195, containing the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; hourly rate or rates of pay and overtime rate or rates of pay if applicable; the number of hours worked, including overtime hours worked if applicable; deductions; and net wages.

148.    Due to Defendants' violations of NYLL § 195, for each workweek that Defendants failed to provide a proper wage statement from April 9, 2011 through February 26, 2015, Plaintiff and members of the Class are each entitled to damages of $100 per workweek, or a total of $2,500

per class member, as provided for by NYLL § 198, reasonable attorneys' fees, costs, and injunctive and declaratory relief.

149.     Due to Defendants' violations of NYLL § 195, for each workweek that Defendant failed to provide a proper wage statement from February 26, 2015 through the present, Plaintiff and members of the Class are each entitled to damages of $250 per work day, or a total of $5,000 per class member, as provided for by NYLL § 198, reasonable attorneys' fees, costs, and injunctive and declaratory relief.

## FOURTH CAUSE OF ACTION
### NYLL – Failure to Provide Accurate Hiring Notices
### (Brought on behalf of Plaintiff and the Class)

150.     Plaintiff incorporates here the previous allegations of this Complaint.

151.     Defendants failed to supply Plaintiff and members of the Class notice as required by NYLL § 195, in English or in the language identified by Plaintiff and members of the Class as their primary language, containing their rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; hourly rate or rates of pay and overtime rate or rates of pay if applicable; the regular pay day designated by the employer in accordance with NYLL § 191; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer; plus such other information as the commissioner deems material and necessary.

152.     Defendants failed to supply Plaintiff and members of the Class with an accurate statement of wages as required by NYLL § 195, containing the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece,

commission, or other; gross wages; hourly rate or rates of pay and overtime rate or rates of pay if applicable; the number of hours worked, including overtime hours worked if applicable; deductions; and net wages.

153.    Due to Defendants' violations of NYLL § 195, Plaintiff and members of the Class are each entitled to damages of $50.00 for each work day that Defendants failed to provide a hiring notice, or a total of $5,000.00 per class member, as provided for by NYLL § 198, reasonable attorneys' fees, costs, and injunctive and declaratory relief.

**WHEREFORE**, Plaintiff, on behalf of herself and the Class, seeks the following relief:

A.    That, at the earliest possible time, Plaintiff be allowed to give notice to the Collective Action Members, or that the Court issue such notice.  Such notice shall inform the Collective Action Members that this civil action has been filed, of the nature of the action, and of their right to join this lawsuit if they believe they were denied proper wages;

B.    Unpaid overtime wages, pursuant to the FLSA and NYLL;

C.    Liquidated damages equal to 100% of the unpaid overtime wages, pursuant to the FLSA and NYLL;

D.    Statutory damages, as provided for by NYLL § 198, for Defendants' failure to provide accurate wage statements;

E.    Statutory damages, as provided for by NYLL § 198, for Defendants' failure to provide accurate hiring notices;

F.    Certification of this case as a class action pursuant to Rule 23;

G.    Designation of Plaintiff as representative of the Rule 23 Class, and counsel of record as Class Counsel;

H.    Pre-judgment and post-judgment interests as provided by law;

I.     Appropriate equitable, declaratory, and injunctive relief to remedy violations, including, but not necessarily limited to, an order enjoining Defendants from continuing its unlawful practices;

J.     Attorneys' fees and costs of the action;

K.     Reasonable incentive awards for Plaintiff to compensate her for the time she spent attempting to recover wages for the Collective Action Members and Class and for the risks she took in doing so; and

L.     Such other and further relief this Court shall deem just and proper.

Dated:   Melville, New York
         July 11, 2019

Respectfully submitted,

By:  s/ Troy L. Kessler
     Troy L. Kessler

Douglas M. Werman*
Maureen A. Salas*
**WERMAN SALAS P.C.**
77 West Washington, Suite 1402
Chicago, Illinois 60602
Telephone: (312) 419-1008
dwerman@flsalaw.com
msalas@flsalaw.com

Travis M. Hedgpeth*
**THE HEDGPETH LAW FIRM, PC**
3050 Post Oak Blvd., Suite 510
Houston, Texas 77056
Telephone: (281) 572-0727
Facsimile: (281) 572-0728
travis@hedgpethlaw.com

Jack Siegel*
**SIEGEL LAW GROUP PLLC**
2820 McKinnon, Suite 5009
Dallas, Texas 75201
Telephone: (214) 790-4454
jack@siegellawgroup.biz

Troy L. Kessler, Esq.
Garrett Kaske, Esq.
**SHULMAN KESSLER LLP**
534 Broadhollow Road, Ste. 275
Melville, NY 11747
Telephone: (631) 499-9100
tkessler@shulmankessler.com
gkaske@shulmankessler.com

*Application for admission pro hac vice
forthcoming

**Attorneys for Plaintiff and
Others Similarly Situated**