UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
                :

**NECOLE ROTTHOFF,** AND ALL OTHERS
SIMILARLY SITUATED,
                :

             Plaintiff,    :   **MEMORANDUM DECISION AND ORDER**

                :   19-CV-04027 (AMD) (CLP)

       – against –      :

                :

**NEW YORK STATE CATHOLIC HEALTH
PLAN, INC., d/b/a FIDELIS CARE NEW
YORK,** *et al.*,
                :

             Defendants.   :
------------------------------------------------------------ X

**ANN M. DONNELLY**, United States District Judge:

       Before the Court are the defendants' motions to dismiss the amended complaint, in which the plaintiff brings a putative class and collective action against New York State Catholic Health Plan, Inc. doing business as Fidelis Care New York, Centene Corporation, Centene Management Company, LLC, New York Quality Healthcare Corporation formally known as Centene Acquisition Corporation, and Centene Company of New York, LLC, alleging violations of the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL").  For the reasons that follow, the defendants' motions are denied.

## BACKGROUND

       The defendants are health insurance providers that provide coverage to over 1.7 million members in New York under the "Fidelis Care" name. (ECF No. 30 ¶ 1.)  The plaintiff worked for the defendants as a Care Management Employee from May of 2016 to January of 2019.  (*Id.* ¶¶ 14, 97.)

The defendants employed individuals—whom the plaintiff calls "Care Management Employees"—"to perform utilization review and case management functions" in their Clinical & Nursing "job family." (*Id.* ¶ 2.) Care Management Employees had various job titles, including the following terms or variations of these terms: "(1) Case/Care Manager; (2) Care Coordinator; (3) Utilization Review/Management; (4) UAS/Assessment Nurse; and (5) Intake Nurse/Specialist." (*Id.*) These individuals performed primarily "non-exempt work, including collecting information to document insured individual's medical circumstances, inputting answers to those questions into [the] computer system, using established guidelines to maximize utilization of plan resources through application of predetermined criteria, coordinating care by performing ministerial tasks, . . . [and] supplying insured individuals with additional information and resources to allow them to educate themselves about their health plan, and other similar work." (*Id.* ¶ 7.) The defendants classified Care Management Employees as exempt from state and federal overtime laws. (*Id.* ¶ 6.)

During her employment, the plaintiff performed typical care management work. (*Id.* ¶¶ 98, 101.) Her "job duties were routine and rote and did not include the exercise of discretion and judgment with respect to matters of significance;" she did not provide "nursing care in a clinical setting" or "direct medical care to individuals." (*Id.* ¶¶ 99, 100.)

According to the plaintiff, the defendants required her to work more than forty hours per week. (*Id.* ¶¶ 102, 103.) For example, from about February of 2018 to September of 2018, the plaintiff "regularly began work at 8:30 am and regularly worked until at least 5:30 pm Monday through Friday." (*Id.* ¶ 104.) She "also worked through her 60-minute meal break at least twice per week." (*Id.*) However, the defendants did not pay her the overtime rate of one and a half times her regular rate of pay when she worked more than forty hours a week; they paid her a

salary, and classified her as exempt from the overtime provisions of the FLSA and NYLL. (*Id.* ¶¶ 105, 107, 108.) In addition, the plaintiff claims that the defendants did not give her an accurate hiring notice when she was hired, issue accurate wage statements or list the number of hours she worked on her paystubs. (*Id.* ¶¶ 109, 110, 111.)

The plaintiff also claims that all of the defendants were her employers. (*Id.* ¶¶ 15-34.) On September 12, 2017, New York State Catholic Health Plan, Inc. ("Fidelis") "entered into an Asset Purchase Agreement with Centene Corporation to transfer substantially all of its assets in exchange for $3.75 billion." (*Id.* ¶ 68.) Fidelis submitted a petition to the New York Attorney General for review and appeal of the transaction; the petition explained that New York Quality Healthcare Corporation was "formed as a wholly owned subsidiary of Centene [Corporation] to operate the business acquired [from Fidelis]," and that Centene Management Company and Centene Company of New York would "assume responsibilities for all operations related to the Managed Care Business Segments." (*Id.* ¶¶ 70-73 (quotation marks omitted).) On June 13, 2018, Centene Corporation and New York Quality Healthcare Corporation entered into an "Undertaking Agreement" with the Attorney General, in which Centene Corporation agreed that it would extend employment offers to Fidelis employees and not terminate them for a period of one year, absent good cause or a material adverse change to the agreement. (*Id.* ¶¶ 74-75.) Centene Corporation also agreed to "cause" New York Quality Healthcare Corporation to set and enforce policies and procedures, designate an employee responsible for a compliance program, provide training and education, and ensure that communication lines were accessible. (*Id.* ¶ 76.) The Attorney General approved the transaction on June 14, 2018, and it closed on July 1, 2018. (*Id.* ¶¶ 78-79.)

The plaintiff alleges that following the closing, Centene Corporation made employment offers to her and other Care Management Employees.  (*Id.* ¶ 80.)  Fidelis transferred the proceeds of the transaction and its remaining assets to Mother Cabrini Health Foundation, Inc., and Centene Corporation, New York Quality Healthcare Corporation and Centene Management Company carried out Fidelis' "business operations" "without interruption or substantial change." (*Id.* ¶¶ 85-86.)  The supervisory personnel, management, office locations, working conditions, equipment, methods of production and products remained the same or substantially the same after the transaction.  (*Id.* ¶¶ 80-82, 93-96.)

## STANDARD OF REVIEW

To survive a motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Matson v. Bd. of Educ.*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Pleadings must be construed in the light most favorable to the plaintiff.  *Hayden v. Paterson*, 594 F.3d 150, 160 (2d Cir. 2010).  A court reviewing a Rule 12(b)(6) motion to dismiss "is generally limited to the facts as presented within the four corners of the complaint, to documents attached to the complaint, or to documents incorporated within the complaint by reference."  *Williams v. Time Warner, Inc.*, 440 F. App'x 7, 9 (2d Cir. 2011) (summary order) (quoting *Taylor v. Vt. Dep't of Educ.*, 313 F.3d 768, 776 (2d Cir. 2002)).

**DISCUSSION**

**I.    Overtime Claims**[1]

Under both the FLSA and NYLL, employees who work more than forty hours a week must be compensated for any additional hours at a rate of at least one and a half times their regular hourly wage.  *See* 29 U.S.C. § 207(a)(1); 29 C.F.R. § 778.110(a); 12 N.Y.C.R.R. § 142-2.2; *see also Nakahata v. N.Y.-Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192, 200 (2d Cir. 2013) ("The FLSA mandates that an employee . . . be compensated at a rate of no less than one and one-half times the regular rate of pay for any hours worked in excess of forty per week," and "the NYLL adopts this same standard."); *Valdez v. H & S Rest. Operations, Inc.*, No. 14-CV-4701, 2016 WL 3079028, at *3 (E.D.N.Y. Mar. 29, 2016), *report and recommendation adopted*, 2016 WL 3087053 (E.D.N.Y. May 27, 2016) ("New York's Labor Law is the state analogue to the federal FLSA.  Although the Labor Law does not require a plaintiff to show either a nexus with interstate commerce or that the employer has any minimum amount of annual sales, it otherwise mirrors the FLSA in compensation provisions regarding overtime wages.") (citations and quotation marks omitted).

To plead a plausible FLSA overtime claim, the plaintiff must provide sufficient detail about the length and frequency of her unpaid work to support a reasonable inference that she worked more than forty hours in a given week.  *Nakahata*, 723 F.3d at 201; *see also Lundy v. Catholic Health Sys. of Long Island Inc.*, 711 F.3d 106, 114 (2d Cir. 2013).  The degree of specificity required to state an overtime claim is "context-specific," and "requires the reviewing

---

[1] The Centene defendants challenge the sufficiency of the plaintiff's allegations supporting her FLSA claim (ECF No. 41 at 13-14), whereas Fidelis challenges the sufficiency of the allegations supporting both her FLSA and NYLL claims (ECF No. 44 at 11-14).

court to draw on its judicial experience and common sense." *Lundy*, 711 F.3d at 114 (quoting *Iqbal*, 556 U.S. at 679) (internal quotation marks omitted).

Nevertheless, the Second Circuit has provided guidance in a trio of cases: *Lundy*, *Nakahata*, and *Dejesus v. HF Management Services, LLC*, 726 F.3d 85 (2d Cir. 2013). First, the plaintiff must allege the hours of assigned work in a given week. *Nakhata*, 723 F.3d at 201 (the plaintiffs alleged that they "were not compensated for work performed during meal breaks, before and after shifts, or during required trainings," but did not allege that they "were scheduled to work forty hours in a given week"). Second, the plaintiff's allegations of overtime must push the total number of hours worked beyond forty hours in a given week. *See Lundy*, 711 F.3d at 114-15; *Dejesus*, 726 F.3d at 88-89 ("The allegations in *Lundy* thus failed because of arithmetic: tallying the plausible factual allegations, we could not get beyond forty hours in any given week, and therefore to a plausible claim for overtime."). Third, consistent with modern pleading standards, the plaintiff must provide factual content and context to her allegations to make her overtime claim plausible; she cannot merely repeat the statutory language and use numbers "plucked from the statute." *Dejesus*, 726 F.3d at 89 (the plaintiff's allegation that she worked overtime was "so threadbare or speculative that it failed to cross the line between the conclusory and the factual") (citations, quotation marks and alterations omitted).

With these principles in mind, I find that the plaintiff has plausibly pled her overtime claims. She alleges that in the period from about February to September of 2018, she worked from 8:30 a.m. until 5:30 p.m. from Monday through Friday, and that she worked through her one-hour meal break at least twice a week. (ECF No. 30 ¶ 104.) "[T]allying the plausible allegations," I calculate that the plaintiff worked nine hours a day five days a week, which totals forty-five hours, and that she had a one-hour meal break, which brings her weekly hours to forty;

6

because she worked through the meal break at least twice a week, the allegations "get [the Court] beyond forty hours" a week for the period from February to September of 2018.  *See Dejesus*, 726 F.3d at 88-89.  That the plaintiff alleges that she "regularly" worked these specific hours during this period does not mean that the pleading is insufficient.  *See Gayvoronskaya v. Americare, Inc.*, 15-CV-6641, 2018 WL 4378162, at *4 (E.D.N.Y. Mar. 26, 2018) ("*Dejesus* does not preclude a plaintiff from proceeding with an FLSA claim based on an allegation that her work was consistent across a given time period."); *Pichardo v. Hoyt Transp. Corp.*, 2018 WL 2074160, at *5 (E.D.N.Y. Jan. 31, 2018) ("Contrary to defendants' argument, the Second Circuit in *Lundy* did not hold that the mere mention of a 'typical' workweek schedule transforms an otherwise valid pleading into an invalid one.").[2]

## II.     Collective and Class Action Allegations

"To state an FLSA collective action claim, a complaint must allege facts sufficient to create the plausible inference that there is a group of individuals similarly situated to [the] [p]laintiff.  A plaintiff can carry that burden, at the notice stage, by presenting substantial allegations that the putative class members were together the victims of a single decision, policy or plan."  *Guzman-Reina v. ABCO Maint., Inc.*, No. 17-CV-1299, 2018 WL 264102, at *4 (E.D.N.Y. Jan. 2, 2018) (citations and quotation marks omitted); *Peck v. Hillside Children's Ctr.*, 915 F. Supp. 2d 435, 438 (W.D.N.Y. 2013) (same).

The defendants' contentions about the plaintiffs' collective and class allegations are more appropriate for the certification stage.  *See Guzman-Reina*, 2018 WL 264102, at *5 ("The Defendants' arguments are more properly directed toward whether a collective action should be certified here, rather than whether Plaintiff's claims are facially sufficient, and would be better

---

[2] Because I am not dismissing the plaintiff's FLSA claim at this time, I do not address the defendants' arguments that I should decline to exercise supplemental jurisdiction over her state law claims.

considered in that context."); *Peck*, 915 F. Supp. 2d at 439 (arguments "directed toward whether a class or collective action should be certified" should be considered in the certification context); *Ramirez-Marin v. JD Classic Builders Corp.*, No. 16-CV-5584, 2017 WL 4358759, at *4 (E.D.N.Y. Sept. 30, 2017) ("The issue of class certification is not presently before the Court. Until a motion for class certification is made, attacks on the sufficiency of Plaintiff's class allegations are premature."); *Tecocoatzi-Ortiz v. Just Salad LLC*, No. 18-CV-7342, 2019 WL 1585163, at *5-6 (S.D.N.Y. Apr. 12, 2019) ("Generally, resolution of whether there are other employees who are similarly situated to the plaintiffs is better left for the conditional certification stage of litigation. . . . Whether the plaintiffs will be able to make a sufficient showing to support certification at the first stage of the certification process so that notice should be sent to potential members of the class cannot be decided on this motion to dismiss.") (citations omitted).

In her complaint, the plaintiff describes the duties she performed and that other members of the collective performed; she also identifies terms that are included in collective members' job titles.  (ECF No. 30 ¶¶ 2, 7.)  She describes the defendants' policy of paying certain employees a salary despite the ministerial and rote nature of their jobs, and she claims that some of these employees worked overtime and did not receive appropriate compensation.  (*See id.* ¶¶ 4-6, 8, 115-18.)  These allegations are sufficient at the motion to dismiss stage.  *See Kattu v. Metro Petroleum, Inc.*, No. 12-CV-54, 2013 WL 4015342, at *3 (W.D.N.Y. Aug. 6, 2013) (the plaintiffs' collective action allegations at the motion to dismiss stage were "sufficient" because the plaintiffs "alleged generally that there are other persons similarly situated to plaintiffs, who were also employed by defendant . . . in similar positions, who worked overtime, but were not paid overtime wages"); *Guzman-Reina*, 2018 WL 264102, at *4 ("Plaintiff has sufficiently alleged a policy to which other dispatchers may plausibly be subject."); *Tecocoatzi-Ortiz*, 2019

WL 1585163, at *6 ("The plaintiffs allege that: the defendants instituted a delivery fee policy that allowed the defendants to retain tips unlawfully that were meant for delivery drivers, the defendants had a uniform maintenance policy that did not comply with the NYLL, the defendants failed to pay overtime and minimum wages, and the defendants subjected them to other unlawful employment practices.  It is at the very least plausible that, as the plaintiffs claim, there are other 'similarly situated' delivery drivers who suffered from these alleged practices.").

### III.    Centene Corporation and New York Quality Healthcare Corporation

The Centene defendants claim that the plaintiff has not sufficiently alleged that Centene Corporation and New York Quality Healthcare Corporation were her employers.  (ECF No. 41 at 18-20.)  Although the plaintiff's allegations about the employer-employee relationship with each defendant are not especially strong, they are sufficient at this early stage of the litigation.

A party must be an employer to be liable under the FLSA.  *See* 29 U.S.C. § 203(d) (an "employer" is "any person acting directly or indirectly in the interest of an employer in relation to an employee").  "The determination of whether an employer-employee relationship exists for purposes of the FLSA should be grounded in economic reality rather than technical concepts." *Irizarry v. Catsimatidis*, 722 F.3d 99, 104 (2d Cir. 2013) (quoting *Barfield v. N.Y.C. Health & Hosps. Corp.*, 537 F.3d 132, 141 (2d Cir. 2008)) (internal quotation marks omitted).  Courts look at "the totality of the circumstances" to determine whether an employer-employee relationship exists, and a determination is made "on a case-by-case basis."  *Barfield*, 537 F.3d at 141-42 (citing *Carter v. Dutchess Cmty. Coll.*, 735 F.2d 8, 12 n.1 (2d Cir. 1984)).  Relevant factors include whether the party (1) has the power to hire and fire employees, (2) supervises and controls employee work schedules or conditions of employment, (3) determines the rate and

9

method of payment, and (4) maintains employment records. *Velez v. Sanchez*, 693 F.3d 308, 326 (2d Cir. 2012).

In assessing these factors, along with the unique circumstance that the plaintiff's original employer agreed to transfer substantially all of its assets during the plaintiff's period of employment, I find that the plaintiff's allegations are sufficient with respect to both Centene Corporation and New York Quality Healthcare Corporation. The plaintiff alleges that Centene Corporation gave her an employment offer; Centene Corporation agreed that it would extend offers of employment to Fidelis employees, would not terminate these employees for a period of one year absent good cause or a material adverse change to the business, and Centene Corporation made offers of employment to the plaintiff and other employees after the transaction between Centene Corporation and Fidelis closed on July 1, 2018. (ECF No. 30 ¶¶ 75, 79-80.) In addition, she alleges that Centene Corporation was required to "cause" New York Quality Healthcare Corporation to set and enforce policies and procedures, designate an employee responsible for a compliance program, provide training and education, and ensure that communication lines were accessible, as outlined in the Undertaking Agreement. (*Id.* ¶ 76.) These allegations, in more than conclusory terms, plausibly state that Centene Corporation could hire and fire employees, and had control over employees' work conditions. It is not clear from the allegations concerning the implementation of work conditions how involved Centene Corporation was in this process; however, viewing the allegations in the light most favorable to the plaintiff, I find that they plausibly suggest that Centene Corporation was responsible for overseeing the implementation of these conditions. *See Shibetti v. Z Rest., Diner & Lounge, Inc.*, No. 18-CV-856, 2020 WL 4572064, at *6 (E.D.N.Y. Aug. 7, 2020) ("An employer-employee

10

relationship can still exist even if employee control is restricted or exercised only occasionally. And an employer need not necessarily have direct control over the plaintiff employees.").

The plaintiff alleges that New York Quality Healthcare Corporation instituted these policies, procedures, training and education, as described in the Undertaking Agreement. (*Id.* ¶¶ 76, 83.) In addition, she alleges that Fidelis submitted a petition to the Office of the Attorney General stating that New York Quality Healthcare Corporation was formed "to operate the business acquired [from Fidelis Care]," and that New York Quality Healthcare Corporation—with Centene Corporation and Centene Management Company—continued Fidelis' "business operations" "without interruption or substantial change." (*Id.* ¶¶ 70, 86.) These allegations plausibly state that New York Quality Healthcare Corporation controlled conditions of employment.

## IV. Successor Liability

The Centene defendants argue that the plaintiff's claims against them should be dismissed to the extent that they pertain to the period prior to July 1, 2018. (ECF No. 41 at 20-30.) Because the plaintiff has alleged sufficient facts to proceed with these claims on a successor liability theory, I decline to dismiss these claims at this time.[3]

The parties disagree about the test I should apply to assess successor liability; the Centene defendants advocate for the common law test, and the plaintiff for the substantial continuity test. The Second Circuit has not decided which test applies to successor liability in the FLSA context, and courts in this district have reached different conclusions. *Compare Kaur*

---

[3] The plaintiff argues that I should not consider the Centene defendants' successor liability argument at all because resolving this issue would not result in dismissal of a "claim." However, courts have considered arguments to limit the scope of claims at the motion to dismiss stage. *See, e.g., Nypl v. JPMorgan Chase & Co.*, No. 15-CV-9300, 2018 WL 1276869, at *4 (S.D.N.Y. Mar. 12, 2018) (narrowing the relevant time period for conspiracy claims because there were "no specific allegations of conspiratorial activity after 2013").

*v. Royal Arcadia Palace, Inc.*, 643 F. Supp. 2d 276, 289 n.10 (E.D.N.Y. 2007) ("The Second Circuit has not specifically addressed which test should be applied in the FLSA context.  It noted, however, that the factors considered in the CERCLA context constitute the federal common-law successor-liability test.  Therefore, I find that that test is appropriately applied in the FLSA context.") (citing *New York v. Nat'l Serv. Ind.*, 460 F.3d 201, 209 (2d. Cir. 2006)) (quotation marks and citation omitted) *with De Ping Song v. 47 Old Country, Inc.*, 975 F. Supp. 2d 288, 296 (E.D.N.Y. 2013), *vacated on other grounds sub nom. De Ping Song v. Inhae Corp.*, 578 F. App'x 22 (2d Cir. 2014) ("Upon review, the court holds that in the absence of direct guidance from the Second Circuit, but in light of that court's reference to the widespread acceptance of the substantial continuity test in the labor law context, the better view is to apply that test in the context of FLSA claims of successor liability.").

"Under the common law, a purchaser of the assets of a corporation is generally not liable to the seller's creditors.  The narrow exceptions to this rule are cases where: (1) the successor expressly or impliedly assumes the predecessor's liability; (2) there was a consolidation or merger of seller and purchaser; (3) the purchasing corporation was a mere continuation of the selling corporation; or (4) where the transaction is entered into fraudulently to escape such obligations." *De Ping Song*, 975 F. Supp. 2d at 293.  The substantial continuity test is "more lenient" and calls for considering nine factors: "(1) whether the successor company had notice of the charge, (2) the ability of the predecessor to provide relief, (3) whether there has been a substantial continuity of business operations, (4) whether the new employer uses the same plant, (5) whether he uses the same or substantially the same work force, (6) whether he uses the same or substantially the same supervisory personnel, (7) whether the same jobs exist under

substantially the same working conditions, (8) whether he uses the same machinery, equipment and methods of production and (9) whether he produces the same product." *Id.* at 294.

While many courts have analyzed successor liability under both standards without deciding which standard applies to FLSA claims, few have outright rejected the applicability of the substantial continuity test. In *Kaur*, the court used the common law test in the FLSA based on the factors that the Second Circuit considered in the CERCLA context. 643 F. Supp. 2d at 289 n.10. Similarly, in *Vasquez v. Ranieri Cheese Corp.*, No. 07-CV-464, 2010 WL 1223606, at *10 (E.D.N.Y. Mar. 26, 2010), the court applied the common law test, noting the Second Circuit's analysis in the CERCLA context and *Kaur*'s application of this analysis to the FLSA context. However, since these cases were decided, some courts have questioned whether the reasoning in the CERCLA context properly extends to the FLSA context. For example, in *Die Pie Song*, the court noted the Second Circuit's "widespread acceptance of the substantial continuity test in the labor law context" and the polices underlying the FLSA "to protect workers from unfair workplace practices and conditions." 975 F. Supp. 2d at 296; *see also Bautista v. Beyond Thai Kitchen, Inc.*, No. 14-CV-4335, 2015 WL 5459737, at *4 (S.D.N.Y. Sept. 17, 2015) ("[T]he Second Circuit has instructed courts to use a flexible approach in applying FLSA . . . Defendants' reliance on *New York v. National Service Industries, Inc.*, 460 F.3d 201, 215 (2d Cir.2006) (Sotomayor, J.), is misplaced. The ruling there addressed substantial continuity only in the context of the [CERCLA] and made no pronouncements concerning substantial continuity in FLSA cases. Defendants are correct that several courts in the Eastern District of New York have applied the traditional common law and New York successor liability standards, but these decisions (1) mistakenly rely on *National Service* and (2) do not conclusively rule that substantial continuity is inapplicable to FLSA claims.") (citations and quotation marks omitted).

13

Indeed, the weight of authority in this Circuit supports applying the substantial continuity test. *See Patino v. Brady Parking, Inc.*, No. 11-CV-3080, 2017 WL 5198192, at *9 (S.D.N.Y. Oct. 31, 2017) ("While the Second Circuit has not delineated what the proper test for successor liability should be in the FLSA context, courts in this district, in deference to the FLSA's broad remedial purposes, have generally applied a broader test than that which would be applicable under New York law.") (referring to the substantial continuity test) (citation and quotation marks omitted); *Xue Ming Wang v. Abumi Sushi Inc.*, 262 F. Supp. 3d 81, 89 (S.D.N.Y. 2017) ("[T]he weight of authority appears to support application of the substantial continuity doctrine to FLSA claims."); *De Ping Song*, 975 F. Supp. 2d at 296 (E.D.N.Y. 2013) ("[A]pplication of the substantial continuity test in a FLSA case is in accord with the thinking of the majority of courts that have discussed the issue—both within and outside of this circuit."); *Ji Li v. New Ichiro Sushi, Inc.*, No. 14-CV-10242, 2020 WL 2094095, at *4 (S.D.N.Y. Apr. 30, 2020) (applying substantial continuity test to FLSA actions).

In light of the "widespread acceptance of the substantial continuity test in the labor law context," *Die Pie Song*, 975 F. Supp. 2d at 296, the "flexible approach" that should be applied to FLSA claims, *Bautista*, 2015 WL 5459737, at *4, and the weight of authority in support of applying the substantial continuity test in the FLSA context, I find that this is the appropriate test and that the plaintiff alleged sufficient facts to avoid dismissal.

Of the test's nine factors, "courts have considered the first two factors—notice and the ability of the predecessor to provide relief—to be indispensable." *Xue Ming Wang*, 262 F. Supp. 3d at 89. The plaintiff alleges that the successors "had notice of the overtime violations . . . prior to the acquisition of the business or assets of [Fidelis]." (ECF No. 30 ¶ 88.) Her overtime claims are based on a "misclassification scheme" that spanned the course of her employment,

and she alleges facts suggesting that the transfer to the Centene defendants was subject to scrutiny. (*See id.* ¶¶ 8, 69, 74.) As the plaintiff points out, there is limited case law addressing the notice requirement at the pleadings stage. The Centene defendants rely heavily on *Marte v. Westbury Mini Mart, Inc.*, No. 16-CV-53, 2017 WL 9485667, at *9 (E.D.N.Y. Jan. 18, 2017), *report and recommendation adopted*, 2017 WL 838194 (E.D.N.Y. Mar. 3, 2017), in which the court found that the plaintiffs did not sufficiently allege notice because they did not "allege that they filed any formal or informal complaints," and the complaint was "silent with regard to notice given to the subsequent owners." Here, unlike *Marte*, the complaint is not "silent" with respect to notice. Moreover, some courts have held that "[a] corporate successor may . . . be liable for certain violations when it had knowledge of its predecessor's acts giving rise to the claim," even if the successor did not have "actual notice" of the lawsuit. *Mei Yue Gao v. Graceful Servs., Inc.*, No. 18-CV-4005, 2019 WL 5395514, at *5 (S.D.N.Y. Oct. 22, 2019) (citing cases). The plaintiff's allegations plausibly suggest that the Centene defendants had notice of the misclassification policy. It may very well be that the plaintiff's notice theory is not borne out by the facts, but the allegations are sufficient at this early stage.

The plaintiff also alleges that Fidelis is "unable to provide the relief sought," and that Fidelis "transferred the proceeds of the Transaction, as well as its remaining assets, to Mother Cabrini Health Foundation, Inc" (ECF No. 30 ¶ 85, 89), plausibly arguing that Fidelis will not be able to provide relief. In addition, the plaintiff alleges that the successors carried out Fidelis' "business operations" "without interruption or substantial change," made employment offers to Fidelis employees, used the same or substantially the same supervisory personnel and employed the same CEO and CFO. (*Id.* ¶¶ 70, 80-82, 86, 93.) She also alleges that the office locations, working conditions, equipment, methods of production and products remained the same after the

15

transaction. (*Id.* ¶¶ 91, 94-96.) These facts are sufficient to allow the plaintiff's successor liability claim to move forward.

## CONCLUSION

For the reasons stated above, I deny the defendants' motions to dismiss the amended complaint.

**SO ORDERED.**

                                                          s/Ann M. Donnelly

                                                          ANN M. DONNELLY
                                                          United States District Judge

Dated: Brooklyn, New York
         September 28, 2020