# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| NECOLE ROTTHOFF, AND ALL OTHERS SIMILARLY SITUATED,<br><br>    *Plaintiff*,<br><br>v.<br><br>NEW YORK STATE CATHOLIC HEALTH PLAN, INC. d/b/a FIDELIS CARE NEW YORK, CENTENE CORPORATION, CENTENE MANAGEMENT COMPANY, LLC, NEW YORK QUALITY HEALTHCARE CORPORATION f/k/a CENTENE ACQUISITION CORPORATION, AND CENTENE COMPANY OF NEW YORK, LLC,<br><br>    *Defendants*. | Civil Action No. 1:19-cv-04027-AMD-CLP |

## PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF HER UNOPPOSED MOTION FOR APPROVAL OF SETTLEMENT UNDER THE FAIR LABOR STANDARDS ACT

DOUGLAS M. WERMAN
MAUREEN A. SALAS
**WERMAN SALAS P.C.**
77 West Washington Street, Suite 1402
Chicago, Illinois 60602
Telephone: (312) 419-1008
dwerman@flsalaw.com
msalas@flsalaw.com

TROY L. KESSLER
GARRETT KASKE
**KESSLER MATURA P.C.**
534 Broadhollow Road, Ste. 275
Melville, NY 11747
Telephone: (631) 499-9100
tkessler@kesslermatura.com
gkaske@kesslermautra.com

**TABLE OF CONTENTS**

I.     INTRODUCTION ...........................................................................................1

II.    STATEMENT OF FACTS AND SUMMARY OF THE LITIGATION ...................1

    A.    Factual Allegations........................................................................1

    B.    Defendants' Defenses ....................................................................3

    C.    History of Settlement Discussions.................................................4

III.   SUMMARY OF SETTLEMENT TERMS ......................................................4

    A.    The Plaintiffs ................................................................................4

    B.    Gross Settlement Amount..............................................................5

    C.    Monetary Awards and Distribution of Settlement Checks.............5

    D.    Limited Release for Plaintiffs .......................................................5

    E.    Service Award ...............................................................................6

    F.    Attorneys' Fees and Litigation Expenses .....................................6

IV.    THE COURT SHOULD APPROVE THE FLSA SETTLEMENT AS FAIR
    AND REASONABLE ...................................................................................6

    A.    Standards for Evaluating the Proposed Settlement........................6

    B.    The Proposed Settlement Meets the Wolinsky Factors .................7

        1.    The Plaintiffs' Range of Possible Recovery ......................7

        2.    The Settlement Allows the Parties to Avoid Significant
            Expenses...........................................................................10

        3.    Plaintiffs' Litigation Risk Warrants Approval of the
            Settlement ........................................................................10

        4.    The Settlement is the Product of Arm's Length Bargaining ..............11

    C.    The Settlement Does Not Raise Any Potential for Abuse ..............11

V.     PLAINTIFFS' COUNSEL'S ATTORNEYS' FEES AND LITIGATION
    EXPENSES ARE REASONABLE.................................................................11

**VI.**     **NAMED PLAINTIFF IS ENTITLED TO A SERVICE AWARD** ............................14

**VII.**    **CONCLUSION** ...........................................................................................................15

# TABLE OF AUTHORITIES

## Cases

*Barsa v. Beacon Health Options, Inc.*
    No. 19-CV-1646 (JPO)(BCM) (S.D.N.Y. September 28, 2020) ......................................8

*Blum v. Stenson*
    465 U.S. 896 (1984) .................................................................................................13

*Burgos v. Ne. Logistics, Inc.*
    No. 15 Civ. 6840, 2018 WL 2376481 (E.D.N.Y. Apr. 26, 2018) ...................................12

*Calle v. Elite Specialty Coatings Plus, Inc.*
    No. 13 Civ. 6126, 2014 WL 6621081 (E.D.N.Y. Nov. 21, 2014) ..................................12

*Chavarria v. New York Airport Serv., LLC*
    875 F. Supp. 2d 164 (E.D.N.Y. 2012) ...................................................................6, 7, 14

*Cheeks v. Freeport Pancake House, Inc*.
    796 F.3d 199 (2d Cir. 2015)...................................................................................6, 7, 11

*Cohan v. Columbia Sussex Mgmt., LLC*
    No. 12 Civ. 3203, 2018 WL 4861391 (E.D.N.Y. Sept. 28, 2018) ..................................12

*Diaz v. Scores Holding Co., Inc.*
    No. 07 Civ. 8718, 2011 WL 6399468 (S.D.N.Y. 2011) .................................................14

*Goldberger v. Integrated Res., Inc.*
    209 F.3d 43 (2d Cir. 2000).....................................................................................12, 13

*Gonzales v. Lovin Oven Catering of Suffolk, Inc.*
    No. 14 Civ. 2824, 2015 WL 6550560 (E.D.N.Y. Oct. 28, 2015) .....................................7

*Hernandez v. Immortal Rise, Inc.*
    306 F.R.D. 91 (E.D.N.Y. 2015) .................................................................................12

*Isett v. Aetna Life Ins. Co*.
    No. 18-3271-CV, 2020 WL 201682 (2nd Cir. Jan. 14, 2020) ..........................................8

*Karic v. Major Auto. Companies, Inc.*
    No. 09 Civ. 5708, 2016 WL 1745037 (E.D.N.Y. Apr. 27, 2016) .....................................9

*Monroe v. FTS USA, LLC*
    860 F.3d 389 (6th Cir. 2017)........................................................................................9

*Nasisi v. Comprehensive Health Management, Inc.*
No. 19 Civ. 4132 (S.D.N.Y. Jan. 14, 2021) ........................................................8

*Sierra v. Spring Scaffolding LLC*
No. 12 Civ. 5160, 2015 WL 10912856 (E.D.N.Y. Sept. 30, 2015) ................................14

*Tyson Foods, Inc.  v. Bouaphakeo*
136 S.Ct. 1036 (2016).................................................................................9

*Wang v. Masago Neo Asian Inc*.
No. 14 Civ. 6249, 2016 WL 7177514 (E.D.N.Y. Sept. 26, 2016) ..................................13

*Weston v. TechSol, LLC*
No. 17 Civ. 0141, 2018 WL 4693527 (E.D.N.Y. Sept. 26, 2018) ............................13, 14

*Wolinsky v. Scholastic Inc.*
900 F. Supp. 2d 332 (S.D.N.Y. 2012) ........................................................7, 10

*Wu v. Maxphoto NY Corp.*
15 Civ. 3050, 2016 WL 7131937 (EDNY Nov. 15, 2016).............................................12

*Yan v. China Gourmet Food Inc.*
No. 17 Civ. 1925, 2018 WL 3442637 (E.D.N.Y. July 17, 2018).......................................7

**Statutes**

Fair Labor Standards Act ................................................................... *Passim*

New York Labor Law ......................................................................... *Passim*

**Rules**

Fed. R. Civ. P. 23 .........................................................................6, 14

## I.     INTRODUCTION

Named Plaintiff Necole Rotthoff ("Named Plaintiff"), on behalf of herself and the ten additional plaintiffs who filed consent forms to join the Action as Opt-In Plaintiffs, seeks approval of the Parties' Settlement Agreement and Release ("Settlement"), attached as Exhibit 1. Under the terms of the Settlement, Defendant Centene Management Company, LLC will pay $100,000 to resolve this wage and hour action for alleged unpaid overtime wages brought under the Fair Labor Standards Act (FLSA) and the New York Labor Law (NYLL) and for alleged failure to provide proper wage notices and wage statements under the NYLL.[1]

The Parties' proposed Settlement fully resolves the claims in the Action for all 11 Plaintiffs. Because the proposed Settlement, including the settlement of FLSA claims, is "fair and reasonable" and the proposed award of attorneys' fees is reasonable, the Court should grant this Motion and enter an order that: (1) approves the Settlement; and (2) authorizes awards of (i) Plaintiffs' attorneys' fees in the amount of one-third of the Gross Settlement Amount; (ii) Plaintiffs' litigation expenses in the amount of $1,156.07; and (iii) a Service Award to the Named Plaintiff in the amount of $2,500.

## II.     STATEMENT OF FACTS AND SUMMARY OF THE LITIGATION

### A.     Factual Allegations

The Named Plaintiff, through counsel, filed a lawsuit against Centene Corporation, New York Quality Healthcare Corporation f/k/a Centene Acquisition Corporation, Centene Management Company, LLC, and Centene Company of New York, LLC (collectively "the Centene Defendants") and New York State Catholic Health Plan, Inc. (collectively "all Defendants") on July 12, 2019. ECF No. 1. After the Centene Defendants filed a pre-motion conference letter in support of dismissal of Plaintiffs' claims, Named Plaintiff filed a First

---

[1]     All capitalized terms are defined in the Settlement.

Amended Complaint on November 1, 2019. ECF 30, Plaintiff's First Amended Complaint ("FAC").

The Named Plaintiff alleged that all Defendants violated the FLSA and the NYLL by misclassifying her and other care management employees as overtime exempt and not paying them overtime wages. The Named Plaintiff alleged the Centene Defendants were liable as an employer for any wage violations that occurred after July 1, 2018, the date Centene Corporation acquired New York State Catholic Health Plan. ECF 30, FAC ¶ 79. She further alleged the Centene Defendants were liable for any wage violations that occurred prior to July 1, 2018 because the Centene Defendants were the successor of New York State Catholic Health Plan. ECF 30, FAC ¶ 87.

The Named Plaintiff alleged she and other care management employees performed non-exempt job duties including collecting information to document insureds' medical circumstances; inputting answers to those questions into Defendants' computer systems; using established guidelines to maximize utilization of plan resources through application of predetermined criteria; coordinating care by performing ministerial tasks like arranging appointments, referrals, and obtaining necessary authorizations from individuals; supplying insured individuals with additional information and resources to allow them to educate themselves about their health plan needs; and other similar work. ECF 30, FAC ¶ 7. The Named Plaintiff further alleges that these job duties were routine and rote and did not involve the exercise of discretion and independent judgment with respect to matters of significance. *Id.* ¶ 99. The Named Plaintiff also alleges that she and other care management employees worked more than 40 hours in one or more individual workweeks and were not paid overtime at one and one-half times their regular rate. *Id.* ¶¶ 102-04, 107, 117-18. The Named Plaintiff claims that because employees primarily performed non-exempt work,

2

Defendants violated federal and New York state law by failing to pay them overtime wages when they worked over 40 hours per week. *Id.* ¶¶ 139, 142-43, 146-47, 151, 157-58.

The Named Plaintiff also alleges Defendants failed to provide compliant wage notice and wage statements as required by the applicable provisions of the NYLL, and as a consequence, Defendants were liable for statutory damages to plaintiffs who worked in New York. *Id.* at ¶¶ 160-167.

## B.    Defendants' Defenses

All Defendants denied that any wage and hour violations occurred and that Plaintiffs are entitled to any damages. ECF 58, New York State Catholic Health Plan's Answer ¶¶ 138-67; ECF 59, Centene Defendant's Answer ¶¶ 138-67. Defendants asserted affirmative defenses, including statutory exemptions.  ECF No. 58, New York State Catholic Health Plan's Answer, Affirmative Defenses Nos. 2 and 3; ECF 59, Centene Defendant's Answer, Affirmative Defense No. 4. Defendants specifically asserted, among other defenses, that the Plaintiffs performed exempt job duties and were properly classified as exempt under the FLSA and the NYLL. Ex. 2, Declaration of Maureen A. Salas ¶ 12 ("Ex. 2, Salas Decl. ¶_"). The Centene Defendants also disputed they are the successor to New York State Catholic Health Plan. *Id.*; *see also* ECF 59, Centene Defendant's Answer, Affirmative Defense No. 24.

The Centene Defendants filed a Motion to Dismiss the First Amended Complaint on January 13, 2020, arguing that Plaintiff failed to state a claim under the FLSA, that Plaintiff failed to plead a viable collective action, that Plaintiff failed to plead that certain of the Centene Defendants were Plaintiff's employer, and that the Centene Defendants could not be held liable for wage and hour violations that may have been committed by New York Catholic Health Plan. ECF No. 41. Defendant New York State Catholic Health Plan filed its own Motion to Dismiss the

3

First Amended Complaint on February 28, 2020, arguing that Plaintiff failed to state a claim under the FLSA and NYLL, that the Court should not exercise supplemental jurisdiction over the NYLL wage statement and wage notice claims, and that plaintiffs failed to plead viable collective action claims. ECF No. 50.

The Court denied both Motions to Dismiss on September 28, 2020.  The Court held that the Named Plaintiff plausibly pled her overtime claims; that Defendants' contentions about the Plaintiffs' collective and class allegations were more appropriate for the certification stage; and Plaintiff's allegations were sufficient to allow her successor liability claim to move forward at this early stage. ECF No. 51, Memorandum Decision and Order at 6, 8, 11, 14-16.

### C.    History of Settlement Discussions

The Parties began discussing settlement of the Plaintiffs' claims in October 2020. Ex. 2, Salas Decl. ¶ 13. Defendants produced excel spreadsheets containing all Plaintiffs' dates of employment, job classification, and number of work weeks worked, and Plaintiffs' Counsel confirmed the accuracy of the information with Plaintiffs. *Id.* The Parties exchanged written settlement proposals in November and December 2020, utilized the assistance of mediator Frank Neuner, and signed a written term sheet on December 9, 2020. *Id.,* ¶14.  The Parties finalized a written settlement agreement in February 2021. *Id.*

## III.    SUMMARY OF SETTLEMENT TERMS

### A.    The Plaintiffs

The Settlement resolves the claims of the Named Plaintiff and ten Opt-in Plaintiffs: Rebecca Hutchinson, Terri-Ann McLean, Ann Marie Mang, Joy Scott, Pamella Chura, Heather Savage, Ryan Westler, Molly Case, Ryan Green, and Gitah Brown-Wasser. Ex. 1, Settlement. Each Plaintiff will receive his or her pro rata share of the settlement amount as a compromise of

his or her claims for alleged unpaid overtime wages and alleged wage notice and wage statement penalties. *Id*., § 1(a)(iv).

## B.     Gross Settlement Amount

The Gross Settlement Amount is $100,000.00, and it includes (i) the settlement payments that will be made to the 11 Plaintiffs; (ii) the Named Plaintiff's Service Award; and (iii) Plaintiffs' Counsel's attorneys' fees and litigation expenses. Ex. 1, Settlement, § 1(a).  The Gross Settlement Amount less the amounts described in (ii) and (iii) above shall be described as the "Net Settlement Amount."  Centene Management Company, LLC will pay the employer's share of payroll taxes on the wage payment portion, separate and apart from the Gross Settlement Amount. *Id.*, § 1(a).

## C.     Monetary Awards and Distribution of Settlement Checks

Each Plaintiff will be allocated a pro rata portion of the Net Settlement Amount for the Settlement of their alleged unpaid overtime wage claims and alleged wage notice and wage statement claims. Ex. 1, Settlement, § 1(a)(iv). The estimated settlement payment for each Plaintiff is provided in the Settlement and is based on the number of work weeks each Plaintiff worked in an at-issue position. Ex. 1, § 1(a)(vi); Ex. 2, Salas Decl. ¶ 17. Centene Management Company, LLC will deliver all settlement payment checks to Plaintiffs' Counsel within 14 days of the Effective Date. Ex. 1, § 1(b).

## D.     Limited Release for Plaintiffs

The Settlement does not contain a general release. Each Plaintiff will release the Released Parties from all claims or causes of action that were alleged in the Action or could have been alleged in the Action arising out of the facts or circumstances alleged in the First Amended Complaint while they worked for all Defendants through the date of Court approval. Ex. 1, § 3(b).

### E. Service Award

The Settlement allows the Named Plaintiff to apply for a Service Award in the amount of Two Thousand Five Hundred Dollars ($2,500.00), to be paid from the Gross Settlement Amount, in acknowledgment of her time spent providing documents and information for the prosecution of this litigation on behalf of the Plaintiffs in her name as the sole named plaintiff, as well as conferring with Plaintiffs' Counsel throughout the litigation. *Id.* at § 1(a)(i).

### F. Attorneys' Fees and Litigation Expenses

Plaintiffs' Counsel seek approval of an award of attorneys' fees and litigation expenses. Plaintiffs' Counsel seek fees in the amount of one-third of the Gross Settlement Amount, $33,333.33, and litigation expenses in an amount of $1,156.07. *Id.* at § 1(a)(ii).

## IV. THE COURT SHOULD APPROVE THE FLSA SETTLEMENT AS FAIR AND REASONABLE

### A. Standards for Evaluating the Proposed Settlement

"Dismissals with prejudice resulting from a FLSA settlement require judicial review." *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 206 (2d Cir. 2015). "The standard for approval of an FLSA settlement is lower than for a Rule 23 settlement because an FLSA settlement does not implicate the same due process concerns as a Rule 23 settlement." *Chavarria v. New York Airport Serv., LLC*, 875 F. Supp. 2d 164, 176 (E.D.N.Y. 2012). As a general matter, courts approve FLSA settlements "when they are reached as a result of contested litigation to resolve bona fide disputes." *Id.*

The fairness and reasonableness of a proposed FLSA settlement is considered in light of the totality of circumstances, including specific factors such as:

> (1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's-length

6

bargaining between experienced counsel; and (5) the possibility of fraud or collusion. *Yan v. China Gourmet Food Inc.*, No. 17 Civ. 1925, 2018 WL 3442637, at *2 (E.D.N.Y. July 17, 2018) (Pollak, Mag.) (quoting *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012) (internal quotations omitted).

The Court also examines the settlement for the potential for abuse, assessing whether the settlement complies with the Second Circuit's admonitions articulated in *Cheeks*. The admonitions include whether the settlement has a "highly restrictive confidentiality provisions," "an overbroad release," or a fee request "without adequate documentation." *Gonzales v. Lovin Oven Catering of Suffolk, Inc.*, No. 14 Civ. 2824, 2015 WL 6550560, at *3 (E.D.N.Y. Oct. 28, 2015) (citing *Cheeks*, 796 F.3d at 206).

### B.     The Proposed Settlement Meets the Wolinsky Factors

The Settlement is fair and reasonable under all the factors the Court must consider.

#### 1.     The Plaintiffs' Range of Possible Recovery

Plaintiffs' recovery is fair and reasonable, given the range of possible recovery and the assumptions used by Plaintiffs in calculating Plaintiffs' alleged damages. "The determination of a reasonable settlement is not susceptible of a mathematical equation yielding a particularized sum, but turns on whether the settlement falls within a range of reasonableness." *Chavarria*, 875 F. Supp. 2d at 174 (internal quotations omitted).

According to Plaintiffs' calculations, the Gross Settlement Amount approximately equals the amount that would be owed to all Plaintiffs if they were entitled to be paid for 6 overtime hours in 70% of all work weeks worked ($75,227.73) *plus* an additional $2,187.60 to $2,5000 to each Plaintiff for his or her wage statement and wage notice claims under the NYLL ($26,875). Ex. 2, Salas Decl. ¶ 17 In these calculations, Plaintiffs' work weeks were reduced by 30% to account for weeks Plaintiffs worked less hours due to holidays, vacations, sick leave and other time off.  Ex.

2, Salas Decl. ¶ 18.  Defendants dispute that Plaintiffs worked over 40 hours in a work week and

that they are entitled to be paid for any of the above-referenced amounts.

The result is fair and reasonable in part because the Settlement must be considered in light

of the very real risk that the Second Circuit's decision in *Isett v. Aetna Life Ins. Co*., No. 18-3271-

CV, 2020 WL 201682 (2nd Cir. Jan. 14, 2020) could reduce Plaintiffs' recovery to zero. In *Isett*,

the Second Circuit affirmed summary judgment for the employer, Aetna, on the application of the

professional exemption to a utilization management position, holding that the plaintiff (an RN who

reviewed denials of claims for medical services) was an exempt professional employee. *Id.*

The Settlement is supported by the approval of similar settlements approved in district

courts within the Second Circuit involving employees in the care management industry following

*Isett*.  *See Barsa v. Beacon Health Options, Inc.,* No. 19 Civ. 1646 (S.D.N.Y. Sept. 28, 2020), ECF

No. 149 (citing the Second Circuit's decision in *Isett* and the dispute over hours worked as reasons

that supported approving a FLSA settlement representing 65% of the overtime wages allegedly

owed to 41 care management employees if they worked 3 additional hours a week); *see also Nasisi*

*v. Comprehensive Health Management, Inc.,* No. 19 Civ. 4132 (S.D.N.Y. Jan. 14, 2021), ECF No.

115 (approving settlement representing 61% of the overtime wages allegedly owed to all opt-in

plaintiffs if five additional hours are added to each week they worked and 30% of the total

maximum notice and statement penalties allegedly owed to NY opt-in plaintiffs).

Plaintiffs' Counsel's investigation and communications with Plaintiffs revealed Plaintiffs

generally worked between 42.5 and 50 hours a week, but they sometimes worked in excess of fifty

hours a week Ex. 2, Salas Decl. ¶ 19. Defendants deny this and assert that any overtime hours

Plaintiffs worked was *de minimis.* ECF No. 58, New York State Catholic Health Plan Answer,

Sixth Affirmative Defense; ECF No. 59, the Centene Defendants' Answer, Eleventh Affirmative

Defense. Because the Parties strongly disagree over the number of hours the Plaintiffs worked, the Court would not be able to resolve this issue short of trial. If the question of hours worked were presented to a jury, the jury may credit some of Plaintiffs' testimony and some of Defendants' testimony. For example, in *Monroe v. FTS USA, LLC,* 860 F.3d 389, 405 (6th Cir. 2017), the jury partially accepted the defendants' defenses and determined that the testifying technicians worked fewer hours than they claimed, which resulted in a reduction of damages. *See also Tyson Foods, Inc. v. Bouaphakeo*, 136 S.Ct. 1036, 1044 (2016) (the jury determined some of the hours plaintiffs spent donning and doffing protective gear was compensable and some was not and reduced plaintiffs' damages in half).

Plaintiffs recognize that at trial, the jury could resolve the question of hours worked with a determination of less than or greater than 6 hours worked per week. The table below shows the Plaintiffs' calculation of Plaintiffs' possible recovery on the overtime claims if a jury were to find that the Plaintiffs worked less than or more than 6 additional hours per week.

| Additional Hours | 3 | 6 | 10 |
|---|---|---|---|
| Overtime Wages | $40,238.09 | $75,227.73 | $105,932.93 |
| 100% Liquidated Damages | $40,238.09 | $75,227.73 | $105,932.93 |

Ex. 2, Salas Decl. ¶ 20.

Given the range of possible outcomes, the Settlement is reasonable in light of the risks Plaintiffs face prevailing at trial, both with respect to proving the merits of their claims and their alleged damages, and in facing likely appeals. *Karic v. Major Auto. Companies, Inc.*, No. 09 Civ. 5708, 2016 WL 1745037, at *5 (E.D.N.Y. Apr. 27, 2016) (Pollak, Mag.) (the "factor of potential protracted litigation favors settlement").

9

### 2.      The Settlement Allows the Parties to Avoid Significant Expenses

The Settlement satisfies the second *Wolinsky* factor because it enables both sides to forego foreseeable costs and risks. Had this matter not resolved, at least some of the Plaintiffs would have been required to sit for depositions, and Defendants would have requested the production of information and documents related to work hours and job activities for each of the Plaintiffs. Ex. 2, Salas Decl. ¶ 21. Similarly, Plaintiffs would have requested documents from Defendants in discovery that could serve as a proxy for hours worked. *Id., ¶* 22. Such records would include computer sign-in data, case management system data, facsimile logs, telephone logs and reports, time-stamped entries or documents, email meta data, time studies, security logs, invoices, expense reports, bills, work schedules, and other documents. *Id.* The case was resolved prior to either side incurring the tremendous costs associated with conducting written and deposition discovery and an ESI search and document production. *Id.*

Defendants are willing to enter this Settlement and forego continued litigation over significant disputed issues of law and fact in order to avoid further costs of litigation. Plaintiffs are willing to resolve their claims for less than they might receive at trial because they will receive a guaranteed payment, and avoid the uncertainty of decertification, a summary judgment motion, and trial.  Furthermore, document production and deposition practice would impose considerable expenses on all parties, which will be avoided with this Settlement.

### 3.      Plaintiffs' Litigation Risk Warrants Approval of the Settlement

The Settlement resolves contested issues and is monetarily significant given the risks of continued litigation. The Settlement is fair given the multiple defenses to liability Defendants would raise with continued litigation. Defendants would argue that Plaintiffs are unable to maintain an FLSA collective through trial. Defendants would likely also argue that they lacked any policy or practice of *requiring* employees in Plaintiffs' positions to work overtime. Finally, on

10

the merits, as discussed above in Section VI.B.1 of this memorandum, Defendants would argue that the Plaintiffs are exempt from federal and state overtime laws under the learned professional exemption and the administrative exemption (or some combination of these or other exemptions); that Plaintiffs did not work more than 40 hours per week; that Plaintiffs received proper wage notices and statements; and that the Centene Defendants would argue they are not liable as a successor for any violations that occurred prior to the acquisition of New York State Catholic Health Plan. Plaintiffs acknowledge that there are risks in continuing to litigate this matter, including the risk of an adverse finding, the substantial delay of payment pending litigation, and the further potential delay of an appeal.

### 4.      The Settlement is the Product of Arm's Length Bargaining

Lastly, approval of this Settlement is supported under the fourth and fifth factors. The case was litigated for 1.5 years before the Settlement was reached, and Plaintiffs were represented by competent and experienced counsel throughout the pre-suit, litigation, and settlement process. There is no risk of fraud or collusion. The Named Plaintiff approves the terms of the Settlement, and the Opt-in Plaintiffs approve the terms of the Settlement. Ex. 2, Salas Decl. ¶¶ 26 - 27.

### C.      The Settlement Does Not Raise Any Potential for Abuse

None of the three indicia identified by the Second Circuit in *Cheeks* are present in this Settlement. The Settlement does not include a highly restrictive confidentiality provision. Nor is the release overbroad. Finally, as explained in Section V of this memorandum, Plaintiffs' Counsel's request for fees is supported by adequate documentation.

## V.      PLAINTIFFS' COUNSEL'S ATTORNEYS' FEES AND LITIGATION EXPENSES ARE REASONABLE

Plaintiffs ask the Court to approve fees equal to one-third of the Gross Settlement Amount: $33,333.33. This request is reasonable in light of the time Plaintiffs' Counsel spent investigating,

litigating, and settling this case, and will spend administering the settlement. Ex. 2, Salas Decl. ¶ 41. Plaintiffs' Counsel also seek approval for a reimbursement of $1,156.07 in costs actually incurred by Plaintiffs' Counsel in litigating this action to date. Ex. 2, Salas Decl. ¶¶ 39-40; Ex. 3, Declaration of Troy Kessler ¶ 13.

In wage and hour cases "percentage-of-recovery method is consistent with the trend in this Circuit." *See Hernandez v. Immortal Rise, Inc.*, 306 F.R.D. 91, 102 (E.D.N.Y. 2015) (citations omitted). Plaintiffs' Counsel's request for a contingency fee of approximately one-third of the settlement is "standard" in this district. *Cohan v. Columbia Sussex Mgmt., LLC*, No. 12 Civ. 3203, 2018 WL 4861391, at *4 (E.D.N.Y. Sept. 28, 2018); *Calle v. Elite Specialty Coatings Plus, Inc.*, No. 13 Civ. 6126, 2014 WL 6621081, at *3 (E.D.N.Y. Nov. 21, 2014) ("A one-third contingency fee is a commonly accepted fee in this Circuit.").

The practice in the Second Circuit has been to apply the percentage method and "'cross-check' the reasonableness of the fees calculated under the percentage method, by independently calculating the fees under the lodestar method and comparing the two figures." *Burgos v. Ne. Logistics, Inc.*, No. 15 Civ. 6840, 2018 WL 2376481, at *7 (E.D.N.Y. Apr. 26, 2018). Where the lodestar method is "used as a mere cross-check, the hours documented by counsel need not be exhaustively scrutinized by the district court." *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 50 (2d Cir. 2000). The lodestar is first determined by multiplying the hours reasonably expended on the case by a reasonable hourly rate. *Wu v. Maxphoto NY Corp.*, 15 Civ. 3050, 2016 WL 7131937, at *3 (EDNY Nov. 15, 2016). Then, the proposed fee is compared to the lodestar. *See, e.g., Id.* at *3-4.

For purposes of determining a reasonable attorneys' fee, the hourly rate must be calculated in accordance with the prevailing market rate in the relevant community. *Blum v. Stenson*, 465

U.S. 896, 895 (1984). Werman Salas P.C. overwhelmingly represents employees on a contingent fee basis, but from time to time, it charges clients on an hourly basis. Ex. 2, Salas Decl. ¶ 35. The rates sought by Plaintiffs' Counsel here are in line with the amounts they charge to hourly paying clients. Ex. 2, Salas Decl. ¶ 35; Ex. 3, Kessler Decl. ¶ 15-16.

Plaintiffs' Counsel's lodestar amounts to over $92,000, which is more than the one-third of the fund fee award Plaintiffs' Counsel requests in the amount of $33,333.33. Ex. 2, Salas Decl. ¶ 32, attachments A-B, Ex. 3, Kessler Decl. ¶ 12, Attachment C. This amounts to a *negative* multiplier, which is reasonable. *See Weston v. TechSol, LLC*, No. 17 Civ. 0141, 2018 WL 4693527, at *9 (E.D.N.Y. Sept. 26, 2018) (Pollak, Mag.) ("Courts regularly award multipliers from two to six times the lodestar.").

The Court should also consider if the attorneys' fees are reasonable based on: (1) time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations. *Goldberg*, 209 F.3d at 50. Based on Plaintiffs' Counsel's contemporaneous records, the risks involved in litigating this matter, the quality of Plaintiffs' Counsel's representation, and the public policy considerations, Plaintiff respectfully requests that the Court approve Plaintiffs' Counsel's requested attorneys' fees. *See supra* § IV.B.

Plaintiffs' Counsel also seeks reimbursement for $1,156.07 in litigation costs. Plaintiffs' Counsel incurred $1,216.95 in costs. Ex. 2, Salas Decl. ¶¶ 39-40; Ex. 3, Kessler Decl. ¶ 13. These costs were incurred pursuing this litigation and include filing and service fees, postage/shipping, travel costs, and research. *Id.* Because these expenses were reasonably incurred, they should be awarded from the Gross Settlement Amount. *Wang v. Masago Neo Asian Inc*., No. 14 Civ. 6249, 2016 WL 7177514, at *4 (E.D.N.Y. Sept. 26, 2016) (citation and internal quotation marks omitted)

(awarding $2,500 in litigation costs in addition to attorneys' fees and noting "[c]osts relating to filing fees, process servers, postage, and photocopying are ordinarily recoverable.").

## VI.    NAMED PLAINTIFF IS ENTITLED TO A SERVICE AWARD

Courts routinely approve service awards in wage and hour settlements. *Sierra v. Spring Scaffolding LLC*, No. 12 Civ. 5160, 2015 WL 10912856, at *7 (E.D.N.Y. Sept. 30, 2015) (collecting cases). These awards are reasonable because "the risks to named plaintiffs in FLSA collective actions are similar to those in the Rule 23 class action context: named plaintiffs, in challenging practices of their current employers, risk retaliation and loss of employment, and may also risk discrimination from future employers who learn of the litigation." *Weston*, 2018 WL 4693527, at *5; *See, also*, *Diaz v. Scores Holding Co., Inc.*, No. 07 Civ. 8718, 2011 WL 6399468, at *3 (S.D.N.Y. 2011) ( "[i]n FLSA collective actions, just as in Rule 23 class actions, service awards are important to compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by the plaintiff").

In light of the efforts of Named Plaintiff, the settlement provides for Named Plaintiff to receive a service payment of $2,500 in addition to her pro rata share of the Settlement. Named Plaintiff spent time and effort conferring with Plaintiffs' Counsel, provided information that assisted in the prosecution of this litigation in her name, and assumed the risk that future employers may look unfavorably upon her for filing a suit against an employer. Ex. 2, Salas Decl. ¶ 28. The requested service award in total amounts to 2.5% of the Gross Settlement Amount, which is a reasonable percentage. *See Chavarria*, 875 F. Supp. 2d at 177 (award of $5,000 to named plaintiff, representing over 3.6% of total settlement amount, was reasonable); *Weston*, 2018 WL 4693527, at *5 (approving service awards of $15,000, amounting to 2.7% of the gross settlement amount of $550,000).

14

## VII.    CONCLUSION

Accordingly, Plaintiff respectfully requests the Court grant this Motion and enter an order that: (1) approves the Settlement and (2) authorizes awards of (i) Plaintiffs' attorneys' fees in the amount of one-third of the Gross Settlement Amount; (ii) Plaintiffs' litigation expenses in the amount of $1,156.07; and (iii) a Service Award to the Named Plaintiff in the amount of $2,500.

Dated:  February 19, 2021                              Respectfully submitted,

                                                        s/Maureen A. Salas
                                                        *One of Plaintiffs' Attorneys*

15