# EXHIBIT 1

# SETTLEMENT AGREEMENT AND RELEASE
(Submitted to Eastern District of New York for Approval)

This Settlement Agreement and Release ("Agreement") is entered into between Named Plaintiff Necole Rotthoff, on behalf of herself and the ten Opt-in Plaintiffs: Rebecca Hutchinson, Terri-Ann McLean, Ann Marie Mang, Joy Scott, Pamella Chura, Heather Savage, Ryan Westler, Molly Case, Ryan Green, and Gitah Brown-Wasser (collectively "Plaintiffs"), and Centene Management Company, LLC ("CMC").

Plaintiffs, through retained counsel, filed a lawsuit against Centene Corporation, New York Quality Healthcare Corporation f/k/a Centene Acquisition Corporation, Centene Management Company, LLC, and Centene Company of New York, LLC (collectively "the Centene Defendants") and New York State Catholic Health Plan, Inc. (collectively "all Defendants"), in the Eastern District of New York and assigned Case No. 19-v-4027 (the "Action"). The Centene Defendants filed an Answer denying all of the allegations asserted therein, and deny that they engaged in any illegal or improper conduct.

Plaintiffs and the Centene Defendants (collectively "the Parties") want to avoid further controversy, potential litigation, costs, legal fees and inconvenience and enter into this Agreement to resolve all claims alleged in the Action or that could have been alleged in the Action, including claims for attorneys' fees, against each other as specified herein.

Therefore, in consideration of the mutual promises set out below, and subject to the Court's approval, the Parties agree as follows:

**1.      Consideration**

**a.**      In exchange for the promises made by and in consideration for all the terms agreed to by Plaintiffs in this Agreement, and without admitting the merits of any claim or defense, CMC agrees to pay the gross total sum of One Hundred Thousand Dollars and zero cents ($100,000.00) (the "Gross Settlement Amount"), inclusive of settlement payments to Plaintiffs as set forth below, Plaintiffs' attorneys' fees and litigation expenses as set forth below, and a service award to Named Plaintiff Necole Rotthoff as set forth below. The Gross Settlement Amount shall be allocated as follows, subject to Court approval:

   i.      In addition to her *pro rata* share of the Net Settlement Amount, Named Plaintiff Necole Rotthoff shall receive an additional payment of $2,500.00 as a service award (the "Service Award").

   ii.     A sum of $33,333.33 shall be paid to Werman Salas P.C. for Plaintiffs' attorneys' fees, and an additional sum of $1,156.07 shall be paid to Werman Salas P.C. for Plaintiffs' litigation expenses. These payments shall constitute full satisfaction of the obligation to pay any amounts to any person, attorney, or law firm for past, present, and future attorneys' fees, expenses, or costs in this Action incurred by any attorney on behalf of Plaintiffs, and shall relieve Defendants and the Released Parties (as defined below) of any other claims or liability to any other attorney or law firm for any attorneys' fees, expenses and/or costs to which any of them may claim to be entitled on

behalf of the Plaintiffs. In exchange for this payment, Plaintiffs' counsel will release and forever discharge any attorneys' lien on the Gross Settlement Amount.

iii. The settlement shall not be contingent on the Court awarding the amount of attorneys' fees, litigation expenses, or Service Award requested by the Named Plaintiff Necole Rotthoff. In the event that the Court awards lesser amounts than requested, the other terms of this Agreement shall remain in full force and effect. Nothing in this section shall preclude the Named Plaintiff Necole Rotthoff from appealing the Court award of attorneys' fees, and the Named Plaintiff Necole Rotthoff reserves her right to timely appeal the allocation of attorneys' fees should the sums awarded by the Court fall below the amounts requested, provided that the amounts requested are consistent with the provisions of this Agreement.

iv. The Gross Settlement Amount less the amount paid to Named Plaintiff Necole Rotthoff as a Service Award and less the amounts paid to Plaintiffs' Counsel for attorneys' fees and litigation expenses equals the "Net Settlement Amount." Each Plaintiff's ratable share of the Net Settlement Amount is set forth in the table below.

| Plaintiff | Ratable Share |
| --- | --- |
| Gitah Brown-Wasser | 3.93% |
| Molly Case | 17.77% |
| Pamella Chura | 14.95% |
| Ryan Green | 9.93% |
| Rebecca Hutchinson | 11.14% |
| Ann Marie Mang | 6.94% |
| Terri-Ann McLean | 5.65% |
| Necole Rotthoff | 11.25% |
| Heather Savage | 4.48% |
| Joy Scott | 7.65% |
| Ryan Westler | 6.29% |

v. For income and payroll tax purposes, the Parties agree that fifty percent (50%) of each Plaintiff's ratable share of the Net Settlement Amount shall be allocated as wages (which shall be subject to required withholdings and deductions and reported as wage income as required by law), and the remaining fifty percent (50%) of each Plaintiff's ratable share of the Net Settlement Amount shall be allocated as liquidated damages, exemplary damages, and interest (which shall not be subject to required withholdings and deductions and shall be reported as non-wage income as required by law). Defendants will pay the employer's share of applicable state and federal payroll taxes on the wage payment portion, separate and apart from the Gross Settlement Amount.

vi. If the Net Settlement Amount is $63,010.60, the Net Settlement Amount

shall be allocated as follows:

| Plaintiff | Ratable Share | Settlement Share Representing Wages | Settlement Share Representing Non-Wages | Total Settlement Payment |
|---|---|---|---|---|
| Gitah Brown-Wasser | 3.93% | $ 1,238.71 | $ 1,238.70 | $ 2,477.41 |
| Molly Case | 17.77% | $ 5,599.71 | $ 5,599.71 | $ 11,199.42 |
| Pamella Chura | 14.95% | $ 4,711.52 | $ 4,711.51 | $ 9,423.03 |
| Ryan Green | 9.93% | $ 3,126.96 | $ 3,126.95 | $ 6,253.91 |
| Rebecca Hutchinson | 11.14% | $ 3,510.19 | $ 3,510.18 | $ 7,020.37 |
| Ann Marie Mang | 6.94% | $ 2,187.82 | $ 2,187.81 | $ 4,375.63 |
| Terri-Ann McLean | 5.65% | $ 1,778.76 | $ 1,778.76 | $ 3,557.52 |
| Necole Rotthoff | 11.25% | $ 3,544.94 | $ 3,544.93 | $ 7,089.87 |
| Heather Savage | 4.48% | $ 1,412.85 | $ 1,412.85 | $ 2,825.70 |
| Joy Scott | 7.65% | $ 2,410.70 | $ 2,410.70 | $ 4,821.40 |
| Ryan Westler | 6.29% | $ 1,983.17 | $ 1,983.17 | $ 3,966.34 |

**b.** CMC shall deliver all settlement payment checks to Werman Salas P.C., 77 W. Washington St., Suite 1402, Chicago, IL 60602, within 14 days after the Effective Date, as defined below in Section 2(a).

**c.** To the extent permitted by law, in no event shall any settlement payment to Plaintiffs create any credit, be considered "compensation" or hours of service, or otherwise affect the calculation of or eligibility for any compensation, bonus, deferred compensation or benefit under any compensation, deferred compensation, pension, retirement, profit sharing, incentive, employee welfare benefit plan, or other benefit plan, nor shall any such payment or award require any contribution under any such plan, or otherwise modify any benefits, contributions or coverage under any other employment compensation or benefit plan or program.

**2.     Settlement Process**

**a.** The Parties' Agreement shall be subject to approval by the Court. The Centene Defendants shall not oppose any motion for approval of this Agreement. The Centene Defendants will be provided with at least seven days to review, comment on, and approve any draft motion, proposed order, and all supporting documents prior to filing. The motion shall seek an Order of Approval that: (i) approves the Agreement as fair and reasonable, and directs consummation of its terms and provisions; (ii) approves the Service Award and Plaintiffs' counsel's attorneys' fees and costs; and (iii) dismisses this Action with prejudice and permanently bars all Plaintiffs from prosecuting against the Released Parties any individual or class claims that are released by this Agreement. The Parties shall consent to the jurisdiction of Magistrate Judge Pollak for the limited purpose of settlement approval. The Effective Date is the date that the Order of Approval in the Action becomes final after the appeal period is exhausted (i.e., the 31st day after the order approving the settlement is entered, if no appeal is filed, or the final resolution of any appeals, if an appeal is filed).

  **b.** The Parties and their counsel agree to cooperate and take all steps necessary and appropriate to dismiss the Action with prejudice upon approval of this Agreement. The Parties agree the Court shall retain jurisdiction with respect to the interpretation, implementation and enforcement of the terms of this Agreement and all orders and judgments entered in connection therewith, and all Parties and their counsel submit to the jurisdiction of the Court for purposes of interpreting, implementing, and enforcing the terms of this Agreement and all orders and judgments entered in connection therewith.

**3.** **Dismissal and Release**

  **a.** In exchange for the consideration described in this Agreement, and contingent on Court approval of this Agreement, Plaintiffs agree to dismiss with prejudice the Action. Upon Court approval, the Action shall be dismissed with prejudice.

  **b.** Plaintiffs will fully, finally, and forever release, settle, compromise, relinquish, and discharge all Released Parties (as defined below) from any and all claims, debts, penalties, liabilities, demands, obligations, guarantees, costs, expenses, attorneys' fees, damages, losses, fines, liens, interest, restitution, actions, or causes of action of whatever kind or nature, whether known or unknown, that were alleged in the Action or could have been alleged in the Action arising out of the facts or circumstances alleged in the First Amended Complaint while they worked for all Defendants through the date of Court approval as described in Section 2(a). This includes all claims for overtime wages under federal, state, and local law; all claims or causes of action related to wage statement and notice violations under the New York Labor Law ("NYLL"), including the New York Wage Theft Prevention Act ("WTPA"); any claims related to any of the foregoing for liquidated, exemplary, or punitive damages, or penalties; any claims related to any of the foregoing for equitable relief (including injunctive or declaratory relief); and any claims related to any of the foregoing for interest and attorneys' fees and costs. This release includes any and all associated successorship liability claims. The Plaintiffs will release their claims as stated in this Paragraph regardless of whether they negotiate their settlement checks. As used in this Agreement, the Released Parties shall include (i) all Defendants and any past or present parents, subsidiaries, affiliates, insurers, insurance policies, and benefit plans; (ii) each of the past and present officers, directors, agents, employees, equity holders (shareholders, holders of membership interests, etc.), representatives, administrators, fiduciaries, and attorneys of the entities and plans described in this sentence; and (iii) the predecessors, successors, transferees, and assigns of each of the persons and entities described in this sentence.

**4.** **Non-Admission**

  The Parties agree that this Agreement, its terms and provisions, and any of the negotiations connected with it, does not constitute, is not intended to be, and shall not be construed, interpreted, or treated in any respect as an admission by any of the Defendants that they acted wrongfully or engaged in any wrongdoing with respect to Plaintiffs, or that the Centene Defendants are responsible for any successorship liability on the claims of individuals who were employed by New York State Catholic Health Plan, Inc. prior to July 1, 2018. Defendants specifically disclaim any liability to or wrongful acts against the Plaintiffs. The Parties agree that this Agreement does not constitute an adjudication of the merits of the Action. The fact and/or substance of the settlement and/or this Agreement shall be inadmissible as evidence in any proceeding (and have

no evidentiary effect in any subsequent litigation), except in an action or proceeding to approve, interpret, or enforce its terms.

**5.  Taxes.**

As described above, each Plaintiff's payment will be treated 50% as wages and 50% as non-wages.  The wage portion will be paid net of all employee withholding taxes, including federal, state, and local income tax, FICA taxes, and federal and state unemployment taxes.  All taxes withheld and paid by CMC will be reported by CMC to the appropriate taxing authorities under the payee's name and social security number.  Each Plaintiff will receive an IRS Form W-2 and IRS Form 1099.  The attorneys' fees, costs and expenses will be paid without withholding and will be reported to the IRS on an IRS Form 1099 to Werman Salas P.C. and to Plaintiffs (in an amount that is proportional to their Ratable Share identified in Section 1(a)(iv) with any extra cents due to rounding allocated to the Named Plaintiff).  Named Plaintiff Necole Rotthoff's Service Award will similarly be paid without withholding and will be reported on an IRS Form 1099.  All Plaintiffs are obligated to pay their respective share of any taxes, local, state or federal, which may become due and owing on the monies received under this Agreement.  In the event that any taxing authority shall challenge this allocation, Defendants shall have no liability for payment of any further tax obligation.  Other than the withholding and reporting requirements herein, Plaintiffs shall be solely responsible for the reporting and payment of their share of any federal, state and/or local income or other taxes on payments received pursuant to this Agreement.  In this regard, each Plaintiff agrees to hold the Released Parties harmless for any taxes, interest or penalties deemed by the government to be owed by him or her in relation to his or her settlement payment.

**6.  Miscellaneous.**

**a.  Assignments.**  Plaintiffs and their counsel represent and warrant that they have not assigned or transferred, or purported to assign or transfer, to any person or entity, any claim or any portion thereof or interest therein, including but not limited to any interest in the Action, or any related action.

**b.  Entire Agreement.**  This Agreement constitutes the entire agreement among the Parties about the Action, and no oral or written representations, warranties or inducements have been made to any Party concerning this Agreement other than the representations, warranties, and covenants contained and memorialized in this Agreement.

**c.  No Waiver by Inaction.**  The failure of any Party to insist upon strict adherence to any term of this Agreement shall not be considered a waiver as to that term or any other term in the Agreement.

**d.  Construction.**  The Parties have had an opportunity to negotiate all terms, all conditions, and the language of this Agreement and hereby agree that all of the terms and conditions shall be construed as if drafted by all Parties and not against any as the drafter.  Accordingly, any rule of construction that any ambiguity or uncertainty in a writing shall be interpreted against the party drafting the written instrument shall not apply to the construction of this Agreement.  The descriptive headings of any paragraphs or sections of this Agreement are inserted for convenience of reference only and do not constitute a part of this Agreement.

DocuSign Envelope ID: F3D9261B-4B6C-4CAF-A25F-B9C23729C4F5

e.  **Choice of Law.**  The enforcement of this Agreement shall be governed and interpreted by, and under, the laws of New York regardless of whether any party is, or may hereafter be, a resident of another state.

f.  **Invalidity of Any Provision.**  Before declaring any provision of this Agreement invalid, the Court shall first attempt to construe the provisions valid to the fullest extent possible consistent with applicable precedents so as to define all provisions of this Agreement valid and enforceable. If the Court should declare any provision of this Agreement invalid, the Parties shall have an opportunity to attempt to negotiate modifications necessary to address the Court's concerns.

g.  **Counterparts.** This Agreement may be executed in one or more counterparts, and each executed counterpart shall be deemed to be one and the same instrument, and shall have the same force and effect as an original instrument, as if all of the Parties to all of the counterparts had signed the same instrument.  A facsimile or copy of an original signature transmitted to the other party or an electronic signature compliant with the ESIGN Act (i.e., DocuSign) is effective as an original signature.  The Parties agree that for all purposes, a .PDF or facsimile of this Agreement shall have the same legal force and effect as the originals, and no party shall have the duty to furnish an original of this Agreement.

h.  **Modifications.**  No amendment or modification of the terms of this Agreement shall be binding on the Parties unless reduced to writing and signed by the person or entity against whom enforcement is sought, and as approved by the Court if Court approval is required.

i.  **Attorneys' Fees and Costs**.  In the event that one or more of the Parties to this Agreement institutes any action or proceeding against any other Party or Parties to enforce the provisions of this Agreement or to declare rights and/or obligations under this Agreement, the successful party shall be entitled to recover from the unsuccessful Party or Parties reasonable attorneys' fees and costs incurred in connection with any such action or proceeding.

j.  **Plaintiffs' Signatory**.  It is agreed that because the Opt-In Plaintiffs are so numerous, it is impractical to have each Opt-In Plaintiff execute this Agreement.  The Named Plaintiff Necole Rotthoff and Plaintiffs' counsel warrant and represent that they are expressly authorized by the Opt-In Plaintiffs whom they represent to negotiate this Agreement and to take all appropriate action required or permitted to be taken by such Parties to effectuate the terms of this Agreement.  If it is approved by the Court, this Agreement shall be binding upon each of the Opt-In Plaintiffs and shall have the same force and effect as if this Agreement were executed by each Opt-In Plaintiff.

k.  **Termination of Settlement Agreement**.  This Agreement is contingent upon approval of the Agreement by the Court.  Failure of the Court to approve the Agreement (after reasonable opportunity for the Parties to cure such problems as may initially prevent the Court from granting such approval) will be grounds for the parties to terminate this Agreement.  A failure of the Court to approve the Agreement shall render the entire settlement voidable and unenforceable as to all Parties herein at the option of the party adversely affected thereby.  Each party may exercise its option to void this settlement as provided in this paragraph by giving notice, in writing, to the other and to the Court within 14 days after the adverse Court order.  In the event

that a party exercises its option to void this settlement, or the settlement does not become final for any other reason, the Agreement shall become null and void *ab initio* and shall have no force or effect; all negotiations, statements, and proceedings related thereto shall be without prejudice to the rights of any party, all of whom shall be restored to their respective positions in the Action prior to the settlement; and neither this Settlement Agreement nor any ancillary documents, actions, or filings shall be admissible or offered into evidence in the Action or any other action for any purpose.

**WHEREFORE,** the undersigned Parties acknowledge that they have been represented by counsel of their choice throughout all negotiations that preceded the execution of this Agreement and that this Agreement has been executed with the consent and advice of counsel, and the undersigned subscribe to this Agreement, as of the date(s) set forth below opposite their respective signatures.

Dated: February 12, 2021

*[Signature: Necole Rotthoff]*
Necole Rotthoff, Named Plaintiff
On behalf of herself and all Opt-In Plaintiffs

Dated: _____

Centene Management Company, LLC

By:_____

Its:_____

COUNSEL FOR THE PARTIES

Dated: February 12, 2021

WERMAN SALAS P.C.

*[Signature: Maureen Salas]*
Attorneys for Plaintiffs

Dated: _____

LITTLER MENDELSON, P.C.

_____
Attorneys for Centene Defendants

7

that a party exercises its option to void this settlement, or the settlement does not become final for any other reason, the Agreement shall become null and void *ab initio* and shall have no force or effect; all negotiations, statements, and proceedings related thereto shall be without prejudice to the rights of any party, all of whom shall be restored to their respective positions in the Action prior to the settlement; and neither this Settlement Agreement nor any ancillary documents, actions, or filings shall be admissible or offered into evidence in the Action or any other action for any purpose.

**WHEREFORE,** the undersigned Parties acknowledge that they have been represented by counsel of their choice throughout all negotiations that preceded the execution of this Agreement and that this Agreement has been executed with the consent and advice of counsel, and the undersigned subscribe to this Agreement, as of the date(s) set forth below opposite their respective signatures.

Dated: _____

_____
Necole Rotthoff, Named Plaintiff
On behalf of herself and all Opt-In Plaintiffs

Dated: 2/12/2021

Centene Management Company, LLC

By: *Tanya McNally*

Its: Vice President, Global HRBP

COUNSEL FOR THE PARTIES

Dated: _____

WERMAN SALAS P.C.

_____
Attorneys for Plaintiffs

Dated: 2/12/2021

LITTLER MENDELSON, P.C.

*[signature]*
Attorneys for Centene Defendants

# AMENDMENT TO SETTLEMENT AGREEMENT AND RELEASE
*Rotthoff v. Centene Management Company, LLC et al.*, **Case No. 19-v-4027 (E.D.N.Y.)**

The purpose of this Amendment to the Settlement Agreement and Release ("Agreement"), which was executed on February 12, 2021 to resolve the above-referenced Action, is to correct a typographical error in the Agreement. It is the intent and agreement of the Parties to the Agreement that the last sentence of section 1(a)(v) should read: "CMC will pay the employer's share of applicable state and federal payroll taxes on the wage payment portion, separate and apart from the Gross Settlement Amount."

STIPULATED BY COUNSEL FOR THE PARTIES

Dated: February 18, 2021

WERMAN SALAS P.C.

*Maureen A. Salas*
D5359A2540194E6...

Attorneys for Plaintiffs

Dated: February 18, 2021

LITTLER MENDELSON, P.C.

*Breanne Martell*
874900732E444E1...

Attorneys for Centene Defendants